RALPH P. ROSNICK ET AL., APPELLANTS, V. EPHRAIM L. MARKS
AND MARKS, CLARE, HOPKINS AND RAUTH, A PARTNERSHIP,
APPELLEES.

357 N.W.2d 186

Filed October 26, 1984.   No. 83-582.

Michael L. Lazer of Levy & Lazer, P.C., for appellants.

Joseph K. Meusey of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Ralph P. Rosnick and Central States Tool and Die Works, Inc., sued Ephraim L. Marks and the law firm in which Marks is a partner. The action alleged malpractice of Marks and his firm during representation of Rosnick and Central States in a suit for breach of contract. The district court sustained a demurrer and dismissed the action on the ground that any cause of action for professional negligence was barred by Neb. Rev. Stat. § 25-222 (Reissue 1979). We affirm.

On May 8, 1978, Rosnick retained Marks and his law firm to file and prosecute an action against Carl W. Renstrom for damages on account of Renstrom's alleged breach of a contract with Rosnick and Central States. Suit was filed on May 9, 1978. (The plaintiffs are designated "Rosnick" for the purpose of this opinion.)

On September 19 Renstrom filed a motion that Rosnick make his petition more definite and certain. The district court sustained Renstrom's motion on October 25 and allowed Rosnick 2 weeks to amend his petition. Marks did not file an amended petition by November 8 and never filed such pleading in the suit against Renstrom.

Nothing transpired in the suit against Renstrom until Marks and his firm were permitted to withdraw as attorneys for Rosnick on July 3, 1980. That same day another attorney took over representation of Rosnick in the Renstrom litigation. On August 26 the district court dismissed the suit against Renstrom because Rosnick failed to comply with the court's order of October 25, 1978, which had necessitated an amended petition. The district court's dismissal of the Rosnick-Renstrom litigation was affirmed by this court on March 12, 1982. See *Rosnick v. Renstrom*, 210 Neb. 759, 316 N.W.2d 765 (1982).

On August 25, 1982, Rosnick filed the malpractice action against Marks and his firm and alleged that the attorneys were negligent in their failure to file an amended petition in response to the court's order of October 25, 1978. On June 16, 1983, the district court sustained a demurrer on the ground that any cause of action for professional negligence was barred by the statute of limitations found in § 25-222. Section 25-222, in pertinent part, provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier . . . .

In construing a statute this court must look to the statutory objective to be accomplished, the evil and mischief to be remedied, or purpose to be served, and then place on the statute

a reasonable or liberal construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. Further, in determining the meaning of a statute, this court will, if possible, ascertain the legislative intent from the language of the act. *Mitchell v. County of Douglas*, 213 Neb. 355, 329 N.W.2d 112 (1983). As far as practicable, we must give effect to the language of a statute and reconcile different statutory provisions so that parts of a statute are consistent, harmonious, and sensible. *State v. Black*, 195 Neb. 366, 238 N.W.2d 231 (1976). Also, we must give effect, if possible, to the several parts of a statute to avoid rejection of a sentence, clause, or word as meaningless or superfluous. *Little Blue N.R.D. v. Lower Platte North N.R.D.*, 206 Neb. 535, 294 N.W.2d 598 (1980).

Statutes of limitations have an important role in disposition of claims between individuals, because such statutes promote and produce finality and thereby stability in human affairs. In this manner statutes of limitations stimulate activity and punish unreasonable delay in prosecuting claims. *Wood v. Carpenter*, 101 U.S. 135, 25 L. Ed. 807 (1879). In particular, § 25-222 insures that actions for professional negligence must be brought shortly after the alleged negligence occurs or is discovered, so that the professional can have a fair opportunity to defend against a claim for malpractice and not find defenses eroded or defeated by time. *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976).

We are somewhat puzzled that, in framing the issues by pleadings, apparently neither party believed it necessary to include the date when Rosnick knew that Marks and his firm had failed to comply with the order achieved through Renstrom's motion. Whether Rosnick actually knew about such failure before August 26, 1980 (dismissal of the contract action), is open to speculation from the pleadings. Proper pleading requires a petition to state in logical and legal form the facts which constitute the plaintiff's cause of action, define the issues to which the defendant must respond at trial, and inform the court of the real matter in dispute. *Russell v. First York Sav. Co., ante* p. 112, 352 N.W.2d 871 (1984).

If a petition alleges a cause of action ostensively barred by the

statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute. *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 343 N.W.2d 753 (1984). Rosnick's petition regarding Marks and his firm does not allege any circumstance preventing Rosnick's knowledge of his attorneys' professional negligence and his right to sue for malpractice. See § 25-222; cf. *Sacchi v. Blodig*, 215 Neb. 817, 341 N.W.2d 326 (1983) (claimant's legal disability under Neb. Rev. Stat. § 25-213 (Reissue 1979)); cf., also, *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962) (malpractice undiscovered and not discoverable with reasonable diligence).

Rosnick contends that the statute of limitations found in § 25-222 runs from the point at which actual damage results from malpractice, not from the act or omission of professional negligence. To support his contention Rosnick directs us to a line of cases typified by *Budd v. Nixen*, 6 Cal. 3d 195, 491 P.2d 433, 98 Cal. Rptr. 849 (1971), where the Supreme Court of California construed that state's Code of Civil Procedure applicable to a malpractice action against an attorney, namely, the provision requiring commencement of the action within 2 years "after the cause of action shall have accrued." In holding that actual loss or damage from malpractice must be sustained for accrual of a cause of action, the court stated in *Budd v. Nixen*:

> The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations omitted.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. . . .
>
> The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations omitted.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

*Id.* at 200-01, 491 P.2d at 436, 98 Cal. Rptr. at 852.

We note that after *Budd v. Nixen, supra,* the California

Legislature amended the malpractice statute of limitations to provide that the time for commencement of the action "shall be tolled during the time that any of the following exist: (1) The plaintiff has not sustained actual injury." Cal. Civ. Proc. Code § 340.6 (West 1982).

In a manner similar to California, legislatures of other jurisdictions have incorporated a damage rule into malpractice statutes of limitation, for example, "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of . . . duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment," Mo. Ann. Stat. § 516.100 (Vernon 1952); the statute of limitations does not begin to run where "damage [is not] readily apparent to the claimant at the time of its origin," N.C. Gen. Stat. § 1-15 (1983); and "the cause of action . . . shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury," Kan. Stat. Ann. § 60-513(b) (1983). One critical question raised by the damage rule is: What extent of damage triggers the statute of limitations?

The questions raised concerning § 25-222 can be stated: When did Rosnick's cause of action against his attorneys accrue? or, When could Rosnick have sued his attorneys for professional negligence?

> The traditional rule is that the statute begins to run as soon as the action accrues, and the cause is said to accrue when the aggrieved party has the right to institute and maintain a suit. In a contract action this means as soon as breach occurs, and in tort, as soon as the act or omission occurs.

*Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 562-63, 279 N.W.2d 603, 606 (1979). A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit, although the nature and extent of damages may not be known. See *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983) (malpractice of attorney).

Section 25-222 requires that the action for malpractice be commenced within 2 years "after the alleged act or omission" and contains a provision for deferred commencement "if the

cause of action is not discovered and could not be reasonably discovered within such two-year period." By using this language the Legislature envisioned situations involving a breach of duty as injury to the person entitled to the particular professional service. "[T]he term 'injury' has both a common and a legal meaning and . . . when used in construing a statute of limitations, the term 'injury' is to be given its legal meaning." *Dortch v. A. H. Robins Co., Inc.*, 59 Or. App. 310, ____, 650 P.2d 1046, 1051 (1982). The injury contemplated by § 25-222 is legal injury.

What, then, is contained in "injury"? As used in Restatement (Second) of Torts § 7 at 12 (1965): "The word 'injury' is used . . . to denote the invasion of any legally protected interest of another." Frequently, the words *injury* and *damage* are used interchangeably and synonymously, but there is a material difference between *injury* and *damage*. As expressed in *Carroll v. Township of Rye*, 13 N.D. 458, 466, 101 N.W. 894, 897 (1904): "There is a wide distinction between 'damage' and 'injury.' They bear the same relation to each other as cause and effect. An 'injury,' in its legal sense, is misconduct, and 'damage' is the legal term applied to the loss resulting from misconduct. [Citation omitted.]"

Injury is the wrongful act or omission which caused the loss. *Monsanto Co. v. Miller*, ____ Ind. App. ____, 455 N.E.2d 392 (1983).

> The terms "injury" and "damage" are not synonymous—in fact, they are, in law, materially different. . . .
>
> " 'The term "injury" is sometimes used in the sense of "damage," as including the harm or loss for which compensation is sought, and has been defined as damage resulting from an unlawful act; but in strict legal significance, there is, properly speaking, a material distinction between the two terms, in that injury means something done against the right of the party, producing damage, whereas damage is the harm, detriment, or loss sustained by reason of the injury.' "

*Clark v. Cassetty*, 71 N.M. 89, 92, 376 P.2d 37, 39 (1962) (citing and quoting from 1 C.J.S. *Actions* § 15 a. (1936)).

*Damage* means "[l]oss . . . caused by the negligence . . . of one person to another . . . . By damage we understand every loss or diminution of what is a man's own, occasioned by the fault of another. The harm, detriment, or loss sustained by reason of an injury." Black's Law Dictionary 351 (5th ed. 1979). Damages are simply a measure of injury. See, also, *Kozar v. Chesapeake and Ohio Railway Company*, 449 F.2d 1238 (6th Cir. 1971). "Damages" means compensation for a legal injury sustained. *Frankel v. United States*, 321 F. Supp. 1331 (E.D. Pa. 1970).

In conjunction with § 25-222 every professional has a duty to render services in a reasonable and prudent manner. A negligent breach of that professional duty invades a legal right of one entitled to receive negligence-free services. Thus, tortious invasion of another's legal right is the triggering device for the statute of limitations. This situation has been characterized as the occurrence rule, in contrast with the damage rule illustrated by *Budd v. Nixen*, 6 Cal. 3d 195, 491 P.2d 433, 98 Cal. Rptr. 849 (1971). Even those jurisdictions espousing the damage rule recognize that a statute of limitations can be triggered at some time before the full extent of damages is sustained. See *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 273 S.E.2d 16 (1980); cf. *Budd v. Nixen, supra* at 201, 491 P.2d at 436, 98 Cal. Rptr. at 852: "Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue."

Legislatures have profound impact on statutes of limitations. The Legislature of Nebraska is no exception. In formulating the statute of limitations for actions based on professional negligence, Nebraska's Legislature has expressly stated that such actions "shall be commenced within two years next after the alleged act or omission." When it selected the language "act or omission" found in § 25-222, the Nebraska Legislature rejected actual damage as the index for inception of the time limit for a suit based on malpractice. Had the Nebraska Legislature desired actual damage to be an element of the statute of limitations under examination, and at the risk of emphasizing the obvious, the patently simple legislative course would have been insertion of such terminology into the statute, that is, malpractice actions "shall be commenced within two

years next after actual damage has been sustained by the claimant." However, this court cannot indulge in substitutional injection of "actual damage" into the malpractice statute of limitations, a phrase which would render "alleged act or omission" meaningless and repudiate the manifest legislative intent found in the unambiguous language of § 25-222. In utilizing the language found in § 25-222, the Nebraska Legislature has opted for the occurrence rule, tempered or ameliorated by a provision for discovery.

Permitting a client's lawsuit to be dismissed on account of an unexplained failure to comply with an order directing affirmative action in prosecution of litigation does indicate an improper degree of professional skill. In the case before us the alleged negligence occurred when Marks failed to amend Rosnick's petition in November 1978. By such omission there was dereliction of the duty to properly prosecute an action on behalf of a client. That breach of professional duty constituted injury to Rosnick and entitled him to prosecute a cause of action against Marks for damages, albeit an action at the point of such breach may have produced a recovery of nominal damages only.

Further, taking the pleaded facts in a light most favorable to Rosnick, failure to comply with the court's order in 1978 apparently remained unknown to Rosnick until July 3, 1980, when another attorney undertook representing Rosnick against Renstrom. On July 3, through his new counsel, Rosnick was charged with the knowledge that Marks had not complied with the 1978 order necessitating an amended petition. Moreover, when the court dismissed the suit against Renstrom on August 26, 1980, Rosnick was absolutely disqualified from pleading ignorance of Marks' failure to comply with the order regarding Rosnick's petition. Therefore, under the discovery provision and its 1-year limitation found in § 25-222, the statute of limitations began to run in 1980, at the earliest on July 3 and at the latest on August 26, when Rosnick was charged with knowledge or actually discovered that Marks and his firm had failed to dutifully prosecute the suit against Renstrom. When Rosnick filed the malpractice suit against Marks in 1982, the postdiscovery 1-year time limit had already expired.

The Legislature has made its choice between the occurrence rule and the damage rule. Under the circumstances we must honor that legislative selection and preference for one form of a statute of limitations over another. Consequently, we reaffirm the rule in Nebraska that a cause of action for malpractice accrues upon the violation of a legal right. See *Schwartz v. Heyden Newport Chem. Corp.*, 12 N.Y.2d 212, 188 N.E.2d 142, 237 N.Y.S.2d 714 (1963). The district court was correct in ruling that Rosnick's claim was barred by the statute of limitations prescribed in § 25-222.

Rosnick alleges the unconstitutionality of § 25-222 under the Nebraska Constitution, namely, violations of the "open court" provision of article I, § 13, and due process required by article I, § 3. Simply stated, Rosnick's contention is that any statute of limitations is unconstitutional.

The requirement of Neb. Const. art. I, § 13, that all courts be open and every person have a remedy by due process of law for any injury to his person, does not mean that reasonable limits may not be imposed upon the time within which one must seek redress in the courts. *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982).

Rosnick has failed to demonstrate any unfair prejudice or injustice resulting from the time limits found in § 25-222 and has, therefore, failed to provide any plausible challenge to the statute in question. Generally, a statute of limitations is a valid, acceptable legislative enactment. We are not inclined to adopt a rule that every statute of limitations in every case violates guarantees of due process under article I, § 3, and open access to the courts under article I, § 13, of the Nebraska Constitution.

The judgment of the lower court is affirmed.

AFFIRMED.