McCook Equity Exchange, a cooperative, appellant, v.
Cooperative Service Company, a Nebraska corporation,
appellee.

433 N.W.2d 509

Filed December 30, 1988.   No. 87-450.

Larry R. Baumann, of Kelley, Scritsmier, Moore & Byrne, P.C., for appellant.

Robert C. Guenzel, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellant, McCook Equity Exchange (McCook), filed this action on August 19, 1982, seeking damages caused by the alleged failure of appellee, Cooperative Service Company (CSC), to discover, during its audits of McCook, a McCook employee's embezzlement of approximately $514,000 during the period from June 1974 through August 1980. McCook proceeded on theories of breach of contract, negligence, and misrepresentation. The trial was bifurcated, pursuant to Neb. Rev. Stat. § 25-221 (Reissue 1985), to determine the issues related to CSC's statute of limitations affirmative defense, and the parties agreed to try the matter to the court without a jury. On April 13, 1987, the district court for Red Willow County held that, regardless of McCook's theory of recovery, the action was one for professional malpractice and was barred by the statute of limitations, Neb. Rev. Stat. § 25-222 (Reissue 1985). McCook timely appealed to this court and contends the district court erred in ruling that the statute of limitations began to run as of the last audit report delivered to McCook on May 2, 1980, and not on August 28, 1980, when the board of directors of McCook voted to terminate CSC as its auditor. We affirm.

The record shows that McCook and CSC stipulated to the following facts. CSC originally was the auditing department of Farmland Industries (Farmland). In June 1967, CSC was set up as a separate Nebraska corporation for the purposes of providing business services for members of Farmland, as well as providing public accounting, customer insurance, and life insurance services to customers outside the Farmland membership. CSC performed audits and auditing services for McCook approximately twice per year since its inception.

During 1974, LeRoy B. Fortner, the manager of McCook, began a systematic scheme of embezzling money from the business. McCook's board of directors became aware of Fortner's activities on August 26, 1980, and on August 27

accepted Fortner's resignation. On August 28, the board voted to "change auditors from Cooperative Service Company to Kennedy and Coe," certified public accountants. McCook subsequently engaged Kennedy and Coe to examine McCook's financial statements for the year ending September 30, 1980.

The parties further stipulated that CSC began its last audit of McCook on or about February 4, 1980. CSC delivered its report of that audit to McCook on May 2, 1980, and all audits performed by CSC and its predecessor department of Farmland were done under generally accepted auditing standards.

George Jackley, who was audit manager for CSC from 1974 to 1980, testified at trial that CSC operated as a licensed public accounting firm, specializing in "agricultural cooperatives to provide auditing services and taxing services to cooperatives within the State of Nebraska." Jackley further testified that CSC maintained files on its existing clients. Two months prior to each client's annual closing date, CSC would send a "letter of inquiry" asking whether the client required an audit for the coming period and whether the client expected CSC to perform the audit.

The letters of inquiry were, Jackley testified, "signed letters stipulating that an audit would be performed, and stipulating the closing dates so that work could be performed." CSC would not perform an audit if the client did not return a signed letter of inquiry requesting an audit. If the client indicated it wanted CSC to perform an audit, CSC would schedule the audit and assign an auditor to coordinate that engagement. The individual auditor would contact the client and make arrangements as to when the work could be performed.

Jackley further testified that although CSC performed audits for McCook on an uninterrupted basis between 1974 and 1980, CSC did not have an agreement to audit McCook on a continuing basis. Rather, the audits were performed under separate and distinct contracts, and CSC was paid separately for each audit. Fortner's uncontroverted testimony was that whenever he received a letter of inquiry from CSC, the matter of retaining CSC as auditor was placed on the agenda of the board of directors meeting immediately following the receipt of

the letter of inquiry. Fortner was instructed by the board, in each instance, to return the letter of inquiry and retain CSC to perform the audit services.

The allegations set forth in McCook's petition state a cause of action for professional negligence, and the applicable statute of limitations is § 25-222. That section provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action . . . .

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of statute of limitations will not be set aside by the Supreme Court unless it is clearly wrong. *Board of Regents v. Wilscam Mullins Birge, ante* p. 675, 433 N.W.2d 478 (1988); *Suzuki v. Holthaus,* 221 Neb. 72, 375 N.W.2d 126 (1985); *League v. Vanice,* 221 Neb. 34, 374 N.W.2d 849 (1985).

McCook contends the statute of limitations in this case began to run on August 28, 1980, the date its board of directors voted to terminate CSC as its auditor, rather than on May 2, 1980, the date CSC delivered its last audit report to McCook, because McCook had a "continuous relationship" with CSC. Brief for appellant at 13. In other words, McCook claims the audits performed by CSC were not separate and distinct transactions, but were performed pursuant to some continuing obligation on the part of CSC to audit McCook. The record does not support such a conclusion. In order for a continuous relationship to toll the statute of limitations regarding a claim for malpractice, there must be a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence. *Lincoln Grain v. Coopers & Lybrand,* 215 Neb. 289, 338 N.W.2d 594 (1983).

While the terms of the "letters of inquiry" sent to clients of CSC were different from those of the "engagement letters" we considered in *Lincoln Grain, supra,* that difference is of little consequence. The significant factor in this case is that CSC

would not perform an audit of McCook unless its letter of inquiry was returned, requesting CSC to perform the audit. Each letter of inquiry pertained to a separate audit and was approved separately by McCook's board of directors. Similarly, in *Lincoln Grain*, we noted that "[Coopers & Lybrand] rendered services only after Lincoln [Grain] accepted the terms of the engagement letter. An engagement letter was indispensable for each of the audits rendered by C & L." *Id*. at 294-95, 338 N.W.2d at 597.

Furthermore, the record establishes that each audit ended upon CSC's delivery to McCook of an audit report, and McCook paid CSC a separate fee for each audit. CSC was not performing, and had not been asked to perform, any auditing services for McCook during the period from May 2 through August 28, 1980. Although McCook did business with CSC over a period of many years, McCook has demonstrated a mere continuity of its professional relationship with CSC in the specialized field of periodic, requested auditing. The parties did not have a "continuous relationship," such as continuing accounting services in all areas, sufficient to toll the statute of limitations for professional negligence. See *Lincoln Grain, supra*. Under the circumstances of this case, the audits performed by CSC at McCook's request were separate and distinct transactions.

Section 25-222 clearly requires that actions for professional negligence be commenced within 2 years after the alleged act or omission in rendering or failure to render professional services providing the basis for such actions. Here, the statute of limitations began to run on May 2, 1980, when CSC rendered its last professional services to McCook.

The evidence is overwhelming that McCook was aware of its injury, and aware that it had a cause of action against CSC, within the 2 years following May 2, 1980. Problems concerning Fortner's activities were discovered by McCook's office manager and two other employees before June or July 1980. At that time, the employees were taking a "second look" at transactions involving Fortner. At a special meeting of the board of directors of McCook, held August 27, 1980, Fortner's resignation was accepted. Negotiations for settlement of the

amount embezzled were held between McCook and Fortner's attorney after August 27, 1980, when McCook's office manager discovered he could verify a "$50,000 defalcation." Fortner offered to settle for $50,000 some 4 days after that discovery, but by then McCook's office manager could "verify that he [Fortner] had mishandled $110,000." McCook turned down that settlement offer.

McCook's office manager testified that Fortner made two other offers to settle, the second of which was "an offer after we had come up with the amount of $515,000; with accrued interest that we had computed it was over six hundred thousand, and he offered to turn over six hundred thousand dollars worth of his property . . . ."

McCook wanted to investigate the value of the property offered by Fortner in settlement, and did not accept the offer. Then, on September 14, 1981, Fortner removed certain trophies from the premises offered in settlement. McCook's office manager testified, "Up until that time we were still working on the premise that he [Fortner] was in good faith going to make us well." These definitive acts of September 14, 1981, occurred more than 1 year after the formal discovery of the defalcation by the McCook board of directors on August 27, 1980, and the discovery of defalcations by McCook employees in June or July of 1980. No legal action was filed until August 19, 1982.

This action was filed on August 19, 1982, more than 2 years after CSC rendered its last professional services to McCook. McCook was aware of the defalcation early in that 2-year period. McCook's action was barred by the applicable statute of limitations, § 25-222.

The decision of the district court is affirmed.

AFFIRMED.