MAURICE A. NICHOLS ET AL., APPELLANTS, V. HOWARD F. ACH, APPELLEE.

447 N.W.2d 220

Filed October 27, 1989.    No. 88-038.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellants.

Douglas Pauley, of Conway, Connolly and Pauley, P.C., for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

FAHRNBRUCH, J.

Maurice A. Nichols and his three adult children appeal a Saline County District Court's summary judgment ruling that their legal malpractice lawsuit against attorney Howard F. Ach is time-barred by Nebraska's statute of limitations Neb. Rev. Stat. § 25-222 (Reissue 1985). We affirm.

Summary judgment is an extreme remedy and should be awarded only when an issue is clear beyond all doubt. A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. In reviewing an order granting summary judgment, this court must take the view of the evidence most favorable to the party against whom it operates and give that party the benefit of all favorable inferences which may be drawn from the evidence. *State Farm Fire & Cas. Co. v. Victor*,

232 Neb. 942, 442 N.W.2d 880 (1989).

Considering only those facts which are uncontroverted, the record reflects the following.

Nichols and his three children, Gene, Linda, and Julie, were the sole stockholders of Maury Corporation (Maury). Maury was engaged in highway construction for more than 20 years, with its principal place of business in Geneva, Nebraska. John Anderson contacted the senior Nichols and asked whether he and his children would be interested in selling their stock in Maury to Wm. Anderson Co., Inc. (Anderson Company). It was owned by the Anderson brothers, John, Jeff, and Tim, and was involved in mechanical work and utility contracting for municipalities.

Maury's stockholders were interested in selling their stock. They appointed Maurice Nichols (Nichols) to negotiate the sale to Anderson Company of all the outstanding stock of Maury. Nichols also owned another corporation, a ready-mix concrete company, which he hoped to sell to the Andersons, but that sale never materialized.

In analyzing this case, it is well to remember that the knowledge of the agent, Nichols, is conclusively presumed to be the knowledge of the principal, the Nichols children. *City of Gering v. Smith Co.*, 215 Neb. 174, 337 N.W.2d 747 (1983).

In June or July of 1981, Nichols, along with his accountant, met with the Anderson brothers and their accountant and discussed the sale of the Maury stock. It was agreed that the Andersons would have their attorney draft a stock purchase agreement. Another meeting was scheduled.

Nichols employed Ach, who practiced law in Geneva and Friend, to attend the scheduled meeting and advise Nichols regarding the stock purchase agreement. At or before the meeting, and in any event before he signed the document, Nichols read the final stock purchase agreement. In substance, the agreement provided that all outstanding stock of Maury was being sold to Anderson Company for $200,000 in excess of the book value of the corporation. The total estimated purchase price was $577,762.33. The downpayment was $127,762.33. The $450,000 balance of purchase price was scheduled to be paid in 10 yearly installments—$40,000 for the first 9 years and

the balance of $90,000 on the 10th anniversary of the sale. Interest of 10 percent on the unpaid principal balance was to be paid annually with the installments of principal. The indebtedness was to be represented by notes executed and delivered by Anderson Company proportionally to the stockholders in accordance with the number of shares owned by each stockholder.

Except for placing the stock in escrow, originally the purchase agreement did not provide for security of payment to the stockholders. Nichols knew that Ach "wanted to get some security." At the meeting he attended, Ach, in the presence of Nichols, requested that one or more of the Anderson brothers secure the transaction with a mortgage on farmland. That request was rejected by the Andersons. After the rejection, it was agreed that John and Jeff Anderson would personally guarantee payment of the purchase price and promissory notes, which they did. The purchase agreement was executed some time after the meeting with the Andersons. Before he signed the purchase agreement, Nichols knew there was no mortgage securing the purchase price, and he, at that time, felt the guaranties were sufficient for his purposes under the sale. Nichols' personal guaranty was sufficient when he borrowed money from the bank, Nichols testified in his deposition. He also knew that the Andersons owned a dozen corporations with assets of $5,000,000. Accountants for both the Andersons and Nichols were present at the meeting with the Andersons. Nichols was aware of the contents of Andersons' financial statements before he signed the agreement on August 31, 1981. Nichols testified that he signed the agreement on the basis of what he perceived was the financial strength of the Anderson Company. Nichols also testified that at the time he read and later signed the purchase agreement, he understood he was giving up the voting rights to Maury's stock.

Anderson Company made two annual payments in the combined sum of $80,000, together with interest, to Maury's original stockholders, the Nicholses. By the time the third annual payment was due, misfortune had fallen upon the company. The Andersons were indicted for bid rigging, Nichols testified. Nichols contacted a lawyer, other than Ach, to discuss

Nichols' concerns that Anderson was going to default on the third payment. Nichols and the lawyer met to discuss the matter on July 18, 1984. On August 21, 1984, Nichols and his newly employed attorney met with one or more of the Andersons and Andersons' attorney to discuss Andersons' situation. At that meeting, Andersons' attorney informed both Nichols and Nichols' lawyer that Maury would be a creditor behind the bank. First National Bank & Trust Company of Lincoln was the escrow agent for the stock purchase agreement. Later, because of a potential conflict between the bank and Nichols, Nichols' new lawyer withdrew from the case.

The third payment, together with interest, was payable September 1, 1984. By that time, Nichols knew that Anderson Company had sold some of Maury's assets. Anderson Company did not pay the September installments of principal and interest.

In their lawsuit against Ach, the Nicholses claim that had they been given security, they would have recovered $440,800 by July 1, 1985. Instead, as of July 1, 1985, they claim they only recovered $300,000 and expended $29,200 in attorney fees to collect that amount. They sued Ach for $170,000.

On appeal, the Nicholses allege two assignments of error: (1) The trial court erred in sustaining the motion for summary judgment because there were unresolved issues of material fact, and (2) the district court erred in granting the motion for summary judgment because § 25-222 is unconstitutional.

As relevant here, § 25-222 provides:

Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier . . . .

The relevant questions under this statute are: Was there an act of malpractice? If so, when did it occur and when did plaintiffs' cause of action accrue? *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985); *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983). For purposes of disposing of this case, without deciding the issue, we assume there was legal malpractice involved.

Summarized, appellants allege in their petition that Ach provided legal services through August 31, 1981, and failed to inform them that they were unsecured under the stock purchase agreement, failed to advise them of the effect of a personal guarantor's insolvency, and failed to advise the appellants of the effect of granting the stock voting rights to the Anderson Company.

Traditionally, a statute of limitations begins to run as soon as the action accrues, and a cause of action in tort accrues as soon as the act or omission occurs. *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). However, the Legislature has tempered the traditional rule, known as the occurrence rule. Section 25-222 requires that an action for malpractice "be commenced within two years next after the alleged act or omission" but contains a provision for deferred commencement "if the cause of action is not discovered and could not be reasonably discovered within such two-year period."

> A cause of action accrues, and the statute of limitations begins to run, when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to discovery.

*Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 26, 430 N.W.2d 34, 37 (1988). " 'It is not necessary that the plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem existed.' " *Sherbeck v. Schaper*, 232 Neb. 754, 762, 442 N.W.2d 364, 369 (1989). For the statute to begin running, the plaintiff need not have suffered actual damages; however, there must be injury, which is the invasion of a legally protected interest. *Rosnick, supra*. "The point at which a statute of limitations begins to run

must be determined from the facts of each case . . . ." *McCook Equity Exch. v. Cooperative Serv. Co.*, 230 Neb. 758, 761, 433 N.W.2d 509, 511 (1988). Under these principles, we find that there are three bases for rejecting the Nicholses' first assignment of error, any one of which is sufficient to bar Nicholses' claim under § 25-222.

First, this court has held under similar circumstances that a client has knowledge of his attorney's alleged negligence at the time the client signs the contract. As we observed in *Smith, supra* at 437, 363 N.W.2d at 530 (quoting *Interholzinger, supra*), " 'Under our law, in the absence of fraud one who signs an instrument without reading it, when he can read and has the opportunity to do so, cannot avoid the effect of his signature merely because he was not informed of the contents of the instrument.' " One who enters into a contractual relationship "is charged with knowledge of [the contract's] contents and is bound thereby." *Interholzinger, supra* at 271, 333 N.W.2d at 899.

It is initially noted that Nicholses do not allege fraud, nor does the record reflect any. Here, the case is even stronger against Nicholses than the cases were against clients in *Smith, supra*, and *Interholzinger, supra*. The evidence is conclusive that Nichols read the purchase agreement before signing it. He is charged with the knowledge of the contents of the contract on August 31, 1981, the date of signing. The statute of limitations bars any action based on legal malpractice 2 years from that date. Nicholses, however, would have this court modify the rule stated in *Smith, supra*, and *Interholzinger, supra*, which raises the second basis for dismissing the Nicholses' claim.

The appellants argue that simply because Nichols signed the contract, he should not be presumed to have been aware of the agreement's deficiencies on the date of signing. Appellants contend that a rule that one understands a contract which he or she signs should be rebuttable by evidence that the contract contained a serious error which could not reasonably have been discovered by a client who was unskilled in the law and who was assured by his attorney that the contract did not jeopardize his interests. Even if the court was inclined to consider modifying the foregoing rule, it would not do so under the facts and

circumstances of this case. The evidence shows unequivocally that Nichols read and understood the purchase agreement before he signed it. The uncontroverted evidence shows that the purchase agreement provided for no security other than placing the stock in escrow and the guaranties and that it transferred the right to vote the stock to the Anderson Company. Moreover, the evidence is conclusive that before he signed the agreement, Nichols knew that the Andersons refused to give the collateral security requested by Ach, that the agreement provided that the buyer would vote all of the shares of stock, and that the Nicholses would retain no voting rights. Before he signed the agreement, Nichols, an experienced businessman, made a deliberate business judgment to accept the personal guaranties of two Anderson brothers. He thought that the personal guaranties were sufficient to protect the appellants. At the time, he was experienced with personal guaranties because he had given them to his bank. The evidence is uncontroverted that in signing the purchase agreement Nichols also relied upon the financial strength of the Andersons' corporations. He had reviewed financial statements of the corporations, which had assets of $5,000,000. The uncontroverted evidence demonstrates that as of August 31, 1981, Nichols was aware that appellants were giving up their stock voting rights and that appellants were unsecured and were depending upon the personal guaranties of the Andersons instead. Therefore, on that date, August 31, 1981, Nichols discovered or reasonably could have discovered Ach's alleged malpractice. Accordingly, a legal malpractice cause of action was barred 2 years thereafter.

There remains the third justification for finding that the Nicholses' cause of action is barred under the statute of limitations. Assuming arguendo that Nichols did not discover or could not reasonably have discovered a cause of action against Ach within 2 years after its occurrence, he did discover facts constituting the basis of the alleged malpractice or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to discovery of Ach's purported negligence no later than August 21, 1984. That was more than a year before Nicholses filed their lawsuit. It is uncontroverted that Nichols was aware

of Anderson Company's financial difficulties and contacted a second attorney on July 18, 1984, concerning the Andersons' possible default under the stock purchase agreement. The undisputed evidence also shows that Nichols was advised by Anderson Company's lawyer on August 21, 1984, that the bank was also a creditor and had priority superior to the Nicholses' claims against the Anderson Company. See *Sherbeck v. Schaper*, 232 Neb. 754, 442 N.W.2d 364 (1989) (holding that knowledge of three mortgages on real estate and a lack of priority was sufficient to trigger the 1-year statute of limitations provided in § 25-222). At that point, August 21, 1984, Nichols was aware of the potential for default by the Anderson Company and that as a creditor, a problem existed concerning appellants' lack of security. Since appellants did not file their cause of action until August 30, 1985, more than 1 year after Nichols acquired this knowledge, their cause of action is barred under the second clause of § 25-222.

There is no genuine issue of material fact. Nichols discovered or reasonably could have discovered the alleged malpractice on August 31, 1981. The uncontradicted evidence also shows that as of August 21, 1984, Nichols discovered Ach's alleged negligence or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to discovery of the malpractice asserted. Summary judgment was proper. The first assignment of error is without merit.

As to appellants' second assignment of error, neither the transcript nor the bill of exceptions shows that the Nicholses claimed § 25-222 was unconstitutional in the trial court. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *In re Interest of A.M.H., ante* p. 610, 447 N.W.2d 40 (1989); *Gardner v. Beatrice Foods Co.,* 231 Neb. 464, 436 N.W.2d 542 (1989).

The judgment is affirmed.

AFFIRMED.

CAPORALE, J., concurring.

I agree with the resolution reached in this case but write separately because I think the tenor of the majority's opinion

exalts the holdings of *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983), and *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985), to a level they do not deserve. The majority, by saying "[e]ven if the court was inclined to consider modifying the [*Interholzinger-Smith*] rule, it would not do so under the facts and circumstances of this case," seems to cite those cases for the proposition that a client necessarily becomes aware of a defectively drawn document by being given an opportunity to read it, irrespective of the nature of the defect. Neither *Interholzinger* nor *Smith* so holds.

The relevant act of malpractice claimed in *Interholzinger* was that the attorney had not, as contemplated, excluded certain real property from the operation of an agreement to sell a corporation. In deciding that the malpractice action was time barred, we said that the client had to have known of that failure when he, after the purchaser of the corporation defaulted, signed an agreement listing the subject property for sale as an asset of the corporation. In *Smith*, we said that a cotenant was obligated to inquire about and know the rights of his cotenant in real estate. Limited to their facts, *Interholzinger* and *Smith* stand only for the proposition that for purposes of determining when an action for alleged legal malpractice begins to run, a client must know what lay persons of ordinary intelligence are deemed to know. That is a far cry from saying that in every instance a client has knowledge of his or her attorney's malpractice at the time he or she is given the opportunity to read a document the attorney drew, irrespective of the nature of the malpractice claimed. Were that so, lay persons would need to be as sophisticated in the law as lawyers are required to be. The cardinal rule remains, as the majority acknowledges, that the point at which a statute of limitations begins to run must be determined from the facts of each case. *McCook Equity Exch. v. Cooperative Serv. Co.*, 230 Neb. 758, 433 N.W.2d 509 (1988).

In this case the plaintiffs knew the transaction was not secured and made an informed business decision to proceed on the strength of certain guaranties. Moreover, their unsecured position was confirmed for them by another lawyer more than a year before they instituted suit. What plaintiffs are really

644

claiming is that their attorney somehow should have prevented them from making what subsequently proved to be a bad business decision. That is patent nonsense.

SHANAHAN, J., joins in this concurrence.