GLORIA K. SASS, PERSONAL REPRESENTATIVE OF THE ESTATE OF
MARY E. KEYES, APPELLANT, V. RANDALL C. HANSON AND
ABRAHAMS, KASLOW & CASSMAN, A NEBRASKA PARTNERSHIP,
APPELLEES.
ROBERT KEYES, APPELLANT, V. RANDALL C. HANSON AND
ABRAHAMS, KASLOW & CASSMAN, A NEBRASKA PARTNERSHIP,
APPELLEES.

554 N.W.2d 642

Filed October 1, 1996.    Nos. A-95-611, A-95-612.

James E. Bachman for appellants.

Lyman L. Larsen and William R. Johnson, of Kennedy,
Holland, DeLacy & Svoboda, for appellees.

IRWIN, SIEVERS, and INBODY, Judges.

SIEVERS, Judge.

These consolidated cases involve legal negligence claims alleging that an estate tax deficiency would not have been assessed by the Internal Revenue Service (IRS) had proper legal advice been given. The dispositive issue raised on appeal is whether the claims are barred by the statute of limitations. The district court dismissed both lawsuits, apparently finding both actions to be barred by the statute of limitations. The plaintiffs have appealed, and we have consolidated the two cases for argument and opinion.

## FACTUAL BACKGROUND

In March 1980, Mary E. Keyes died and left a separate piece of farm ground to each of her four children. The law firm of Abrahams, Kaslow & Cassman (Abrahams) was hired to probate the estate, and Randall C. Hanson, then an associate of the firm, did the work. Section 2032A of the Internal Revenue Code allows a special use election for inherited farm ground which values the land as farm ground for estate tax purposes instead of as commercial land or as land used for other purposes. Because farm use is valued lower than would be a commercial use, for example, the end result is lower federal estate tax. Each of the four heirs filed a § 2032A farm ground election. One of the heirs, Robert Keyes, consequently recognized a tax savings in excess of $45,000 on the 160 acres of land he inherited. To preserve the § 2032A election, however, there are limitations on subsequent use of the inherited land. The plaintiffs, Keyes and Gloria K. Sass, personal representative of the estate, claim that Hanson and Abrahams were negligent when they did not adequately advise or warn that a subsequent cash lease of the inherited land would violate § 2032A, potentially resulting in recapture tax and interest.

In 1987, the IRS contacted the four heirs, including Keyes, initially via Hanson, asking them to complete a questionnaire concerning the § 2032A farm ground election. Keyes completed his questionnaire on December 28, 1987. In February 1989, Peter Cavanaugh of the IRS received a letter from Keyes and

scheduled a meeting. The date of this meeting is uncertain, but the parties have stipulated that the meeting occurred prior to June 18, 1989. Cavanaugh advised Keyes that he owed recapture tax because Keyes cash-leased the farm ground in violation of § 2032A. After the meeting, the first document from the IRS to Keyes asserting a deficiency was the "30-day letter" in October 1989. As a result, Keyes retained counsel, who filed an appeal of the IRS audit report with the IRS Appeals Office. Penalties were ultimately waived, but Keyes paid recapture tax and interest in excess of $140,000.

Although Hanson and Abrahams deny its effectiveness for lack of delivery, the parties did sign a "Tolling Agreement" whereby the attorneys waived any statute of limitations defense as to any claim or claims that might become barred by the statute of limitations during the period from and after June 18, 1990, until 30 days after termination of the agreement. An action filed within 30 days of the termination would be deemed to have been brought on June 18, 1990. That agreement, however, did not waive the statute of limitations defense to claims which had already become barred prior to June 18, 1990. The agreement provided that either party could terminate it by written notice via certified mail to the other. Keyes and the personal representative filed separate suits against Hanson and Abrahams on January 11, 1994, in which they alleged that the tolling agreement had been terminated "by the Defendants" on December 22, 1993.

Upon Hanson and Abrahams' motions for summary judgment in each case, the court found that there was no genuine issue of material fact and that Hanson and Abrahams were entitled to judgment as a matter of law. In the personal representative's action, the court's ruling was based on the finding that Keyes was the only real party in interest because the estate did not pay any recapture tax or interest and thus the estate sustained no damage. In Keyes' case, the district court found no issue of material fact, and although not specifically explained, the trial court's decision appears to have been premised upon the ground that the statute of limitations had run on Keyes' case. The personal representative and Keyes appeal the dismissal of their lawsuits.

## ASSIGNMENTS OF ERROR

The assignments of error are that the district court erred (1) in holding that the statute of limitations bars these actions and (2) in holding that the personal representative of the estate could not bring an action on behalf of Keyes, a beneficiary.

## STANDARD OF REVIEW

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995). Regarding questions of law, an appellate court has the obligation to reach a conclusion independent of that of the trial court. *Id.* Keyes and the personal representative assert that the facts of these cases are not in dispute, and our review of the record reveals that this is so with respect to the dispositive facts.

## DISCUSSION

The obvious starting place is the statute of limitations for an action for professional negligence. Neb. Rev. Stat. § 25-222 (Reissue 1995) provides:

Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further,* that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

With the provisions of the statute of limitations in mind, we summarize the second amended petitions. The petitions are the same and allege that the provisions of § 2032A allow a special use election to value inherited property as farm property, despite the potential of a higher use and thus higher value, if certain conditions are met. Keyes alleges that he made the election under § 2032A. Keyes further alleges that Treas. Reg. § 20.2032A-3(b)(1) (1980) clearly provided that mere passive rental of the property would not be a qualified use under § 2032A and that a cash rental, even where the owner elects to participate in the farming operations, does not satisfy the qualified use test. Although the petitions are indefinite as to when such duty existed or was violated, the petitions allege that Hanson had a duty to warn the heirs that if they cash-leased the land in question, they would violate § 2032A and be subject to a recapture tax. The petitions then refer to two letters Hanson sent dated December 18, 1980, and March 23, 1981, as the only advice rendered on the subject of the § 2032A election.

Hanson sent Keyes and the other heirs a letter dated December 18, 1980, and sent one to Keyes dated March 21, 1981, both of which are attached to the petitions. The letters are lengthy and will not be fully repeated here. Neither letter specifically states, "Thou shalt not cash-rent," but the letter of December 18 does advise that the heir needs to "materially participate in the farming operation" if the land is leased to an unrelated third party. It further advises that "[m]aterial participation is determined from all of the facts available, but physical work and participation in management decisions are the principal factors to be considered." The letter also provides that "[i]f you contemplate the lease of your property to an unrelated third-party you should consult an attorney to review the regulations governing this matter so that you are sure your particular arrangement constitutes material participation in the farming activity."

The letter of March 23, 1981, from Hanson to Keyes was mailed in conjunction with Keyes' 1980 federal and state income tax returns. Once again, Hanson reiterated the necessity of Keyes' "material[] participa[tion] in the farming of this property." The March 23 letter further advises that it "is very desir-

able for you to lease this ground in the future on a crop share basis." The March 23 letter also cautions that if the requirements for material participation are not met, "you are taking a chance that the Internal Revenue Service will decide that you have not materially participated in farming and, accordingly, assess a deficiency in the federal estate tax . . . . [This] could amount to as much as $55,000.00." The special use valuation questionnaire completed by Keyes reveals that he cash-rented 130 of his 160 acres to an unrelated third party in 1980, 1981, and 1982.

A cause of action for professional negligence accrues and the statute of limitations begins to run at the time of the alleged act or omission which is the basis for the claim of professional negligence. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996); *Tidwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985). In the instant case, it is also of great significance that the statute of limitations may begin to run at some time before the full extent of damages has been sustained. *Suzuki v. Holthaus*, 221 Neb. 72, 375 N.W.2d 126 (1985). Given the allegation that Hanson's only advice concerning the § 2032A special use election occurred in December 1980 and March 1981, any cause of action based on such advice accrued no later than March 23, 1981 (the date of Hanson's last letter to Keyes about the IRS guidelines requiring Keyes to "materially participate" in farming to avoid the assessment of additional taxes). As this is a motion for summary judgment, we need not consider or decide whether Hanson's advice was deficient in any respect.

*Zion Wheel Baptist Church*, 249 Neb. at 358, 543 N.W.2d at 450, holds that when the petition shows on its face that it is barred by the statute of limitations, as do these lawsuits, then the "petition must allege why [the] cause of action was not discovered and could not reasonably have been discovered within such 2-year period." Keyes seeks to invoke the discovery doctrine by alleging that he was not aware he had lost the special use election until the IRS notified him of such within 1 year before June 18, 1990 (the date his suit is deemed under the tolling agreement to have been filed). Keyes claims this was the earliest notice he had of the loss of the special use election.

For statute of limitations purposes, discovery occurs "when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action." *Id.*, citing *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994). Discovery occurs when one knows of injury or damage and not when one has a legal right to seek redress in court. *Norfolk Iron & Metal v. Behnke*, 230 Neb. 414, 432 N.W.2d 18 (1988). Our statute of limitations for professional negligence utilizes the "occurrence rule," not the "damage rule." *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). See, also, Annot., When Statute of Limitations Begins To Run Upon Action Against Attorney For Malpractice, 32 A.L.R.4th 260 (1984). Moreover, a plaintiff need not have suffered actual damages; it is sufficient if there is an invasion of a legally protected interest. *Nichols v. Ach*, 233 Neb. 634, 447 N.W.2d 220 (1989). In such a formulation, it is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem exists. See *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988).

Although Hanson and Abrahams deny that the tolling agreement was effective, this is a motion for summary judgment, requiring that we view the evidence most favorably to Keyes. See *LaBenz Trucking v. Snyder*, 246 Neb. 468, 519 N.W.2d 259 (1994). Therefore, we consider the tolling agreement to have been in effect, as Keyes alleges. By virtue of the terms of the tolling agreement, the lawsuits are deemed to have been filed on June 18, 1990. Thus, under § 25-222 and the foregoing authority, if discovery had occurred a year or more before June 18, 1990, the statute of limitations barred the actions and the district court correctly granted summary judgment to Hanson and Abrahams.

Returning to the record, on December 18, 1987, Hanson wrote to Keyes, enclosing a copy of a letter Hanson had received from a representative of the IRS, as well as an IRS questionnaire for the heirs to answer in order to determine whether the § 2032A election was preserved. Although Keyes is

indefinite about whether he received Hanson's letter and the enclosure from the IRS, it is undisputed that he completed the questionnaire and signed it on December 28, 1987. Therein, Keyes disclosed that in the years 1980, 1981, and 1982 he cash-rented 130 acres of the land to unrelated parties. On February 8, 1989, Hanson wrote to Keyes, advising him that the IRS had reviewed the questionnaire and that as a result, "the [IRS] has now assigned an individual to make further inquiry as to whether any problems exist which would cause a recapture of part of the estate tax saved as a result of the special valuation election made in your mother's estate." The balance of that letter deals with whether Keyes wanted Hanson to represent him in dealings with the IRS regarding this matter, as well as the terms of such proposed representation. In response, Keyes signed a document addressed to Hanson indicating that he had reviewed Hanson's letter, as well as the accompanying IRS letter of February 7, 1989, "concerning matters relating to the special use valuation elected in the estate of Mary E. Keyes, particularly whether or not events may have occurred which would cause a recapture of part of the estate tax saved as a result of the election." By this document, Keyes declined to be represented by Hanson and designated himself as agent for all dealings with the IRS.

The record also contains a copy of a handwritten letter from Keyes to Senator Robert Kerrey which is undated and only partially legible. However, that letter does clearly deal with the matter of the § 2032A election, and on June 13, 1989, Senator Kerrey wrote to the IRS, forwarding a copy of Keyes' letter and asking for information "which will enable me to respond to my constituent's inquiry." Senator Kerrey also authored a separate letter to Keyes, stating in part: "Thank you for contacting my office regarding IRS dispute. I have requested information from the IRS-Omaha regarding this matter." The date of this letter from the senator is also June 13, 1989.

The record also contains a copy of a letter from Cavanaugh, an estate tax attorney with the IRS, dated April 24, 1989, and addressed to Keyes in which Cavanaugh states that a review of the questionnaire sent to Keyes in December 1987 indicated that the property was cash-rented to nonrelatives for several

years. The letter continues: "If that is in fact the case, then this may present a problem." Finally, a copy of an affidavit from Keyes which was introduced into evidence at the hearing on the motion for summary judgment states in part: "Prior to June of 1989, I was informed by an IRS agent that I had violated the terms of the special use election. I then contacted Senator Robert Kerrey's office for assistance."

Based upon Hanson's February 8, 1989, letter; Cavanaugh's April 24, 1989, letter; and the June 13, 1989, correspondence from Senator Kerrey's office, we conclude there is ample, in fact abundant, evidence that prior to June 18, 1989, Keyes knew a "problem existed." *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 684, 433 N.W.2d 478, 484 (1988). In fact, his knowledge was very complete by June 18, 1989. He knew that the IRS was making inquiry, that he had provided the IRS with information that he had cash-leased the land, and that the IRS took the position that his cash-renting of part of the land in the early 1980's caused him to lose the § 2032A election. Keyes had in hand the written advice from Hanson via letters in 1980 and 1981 which contained extensive information about the special use election. However, those letters did not expressly state, "Thou shalt not cash-rent," which is the essence of what Keyes claims he should have been told. The undisputed evidence is that Keyes had knowledge which, if not actual knowledge of his potential claim, was certainly sufficient, if pursued, to lead to the discovery of the alleged malpractice. The conclusion is inescapable that Keyes knew the exact nature of the problem, that is, that he had cash-rented the property, which could cause a recapture of the tax savings he had earlier realized, as well as an assessment of interest and a penalty. Keyes had this knowledge before June 18, 1989, 1 year prior to the date on which the lawsuits were deemed to have been filed. Thus, his action is barred by the statute of limitations.

However, Keyes argues that the cause of action did not accrue until the date of the actual IRS assessment, and thus the statute of limitations did not commence running until that date. In support of this proposition, Keyes cites a number of cases from other jurisdictions, including *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967) (holding that cause of action did not

arise until tax deficiency was assessed because had it never been assessed, plaintiff would never have been harmed and therefore would have had no cause of action), and *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657 (1984) (holding there is no loss or injury unless third party, IRS, decides to assess tax deficiency).

Keyes argues that given the extensive appeals process within the IRS and the U.S. Tax Court, a cause of action does not accrue until final assessment or payment. This argument runs counter to established Nebraska law, which holds that for the statute of limitations to begin running, the plaintiff need not have suffered actual damages. See *Nichols v. Ach*, 233 Neb. 634, 447 N.W.2d 220 (1989). In *Seagren v. Peterson*, 225 Neb. 747, 407 N.W.2d 790 (1987), Seagren claimed legal malpractice against an attorney for failing to file an estate tax return and thus subjecting the Seagren estate to a penalty and interest. The Supreme Court rejected Seagren's argument that the estate was not damaged until the penalty and interest were assessed and thus that the statute of limitations had not yet accrued. The court stated that for purposes of extending the statute of limitations, discovery can be triggered at some time before the full extent of damages is sustained. In *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995), the court reaffirmed its prior holding that the professional negligence statute of limitations is an occurrence statute, ameliorated by the discovery rule. Thus, the statute begins to run when the legal malpractice occurs, not upon the determination of damages.

Accordingly, we find that Keyes' action was in fact barred by the statute of limitations, and we affirm the district court's decision in that case. As in *Seevers*, it is not necessary that we pinpoint a precise date—it is enough that discovery had clearly occurred more than 1 year prior to the filing of suit on June 18, 1990.

In the case brought by the personal representative, the allegations in the petition are the same as those in Keyes' case. Every action must be prosecuted in the name of the real party in interest. Neb. Rev. Stat. § 25-301 (Reissue 1995). The petition does not allege an assignment of Keyes' cause of action to the personal representative, and of course, Keyes has filed his own

lawsuit. The evidence is clear that Keyes is the one who paid over $140,000 in recapture tax and interest. It is an elementary proposition that it is Keyes, not the personal representative of his mother's estate, who is the real party in interest in such circumstances. Moreover, as the petitions allege the same facts, the statute of limitations difficulties present in Keyes' lawsuit obviously are also present in the personal representative's lawsuit. Thus, the district court was also correct in granting summary judgment in favor of Hanson and Abrahams in the personal representative's lawsuit.

AFFIRMED.