DAVID W. SEEVERS, APPELLANT, V. PAUL STEPHEN POTTER,
APPELLEE.

537 N.W.2d 505

Filed September 29, 1995.  No. S–94–077.

Joel G. Lonowski, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Steven H. Heldt, of Smith, Heldt & McKeone, for appellee.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

David W. Seevers brought this criminal defense legal malpractice action seeking damages in the amount of $12,362.73 for the alleged professional negligence of the defendant, Paul Stephen Potter, stemming from Potter's representation of Seevers in various criminal matters. Upon a demurrer filed by Potter, the district court dismissed Seevers' amended petition on the ground that it was barred by the statute of limitations, Neb. Rev. Stat. § 25-222 (Reissue 1989). Seevers asks this court to determine that the statute of limitations for pursuing a legal malpractice claim against a criminal defense attorney is tolled until postconviction relief is granted. We affirm because Seevers' imprisonment did not toll the statute of limitations.

## ASSIGNMENTS OF ERROR

Seevers contends that the district court erred in (1) concluding that Seevers' cause of action was barred by the statute of limitations and (2) finding that the statute of limitations was not tolled when Seevers sought postconviction relief.

## FACTUAL BACKGROUND

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994). With that in mind, we take as true for the purposes of the demurrer the following facts set forth by Seevers in his amended petition.

In July 1989, Seevers was arrested and charged with possession of controlled substances, distribution of controlled substances, and violation of probation. Thereafter, Seevers retained Potter to represent him with regard to the criminal charges. During the course of Potter's legal representation of Seevers, Potter advised Seevers that he could not sustain a viable defense to the criminal charges and suggested that it would be in Seevers' best interests to negotiate a plea bargain. Pursuant to Potter's advice, Seevers pled no contest to all charges in exchange for the prosecutor's agreement to dismiss other criminal matters which were allegedly pending against Seevers.

According to Seevers, Potter advised that if Seevers accepted the plea agreement, Seevers would be sentenced to an aggregate total of 3 to 6 years' imprisonment in a minimum security facility. In fact, the district court sentenced Seevers to an aggregate term of 7 to 15 years in the Nebraska State Penitentiary. Immediately following sentencing, Seevers requested that Potter take the necessary steps in order to appeal the sentences imposed by the district court. Potter allegedly represented to Seevers that he would perfect such an appeal, but subsequently failed and refused to do so. Seevers began serving his sentences.

During his incarceration, Seevers retained different counsel in an attempt to obtain early parole. Seevers' request for early parole was denied. Subsequently, in August 1992, Seevers employed a third attorney and filed a motion in the district court for Lincoln County, requesting the court to vacate and set aside his original sentences on the grounds that Potter's actions violated Seevers' constitutional rights. On September 2, the district court sustained Seevers' motion and vacated his sentences. On September 9, Seevers was resentenced to 2 to 5 years for both controlled substance charges and not less than 1 year for the probation violation.

Seevers filed the original petition in the instant legal malpractice action on September 8, 1993, contending that Potter was negligent in failing to exercise the ordinary skill and knowledge of an attorney in the State of Nebraska and Lincoln County and that Potter failed and refused to (1) properly advise Seevers of the ramifications of entering into the original plea bargain agreement prior to his sentencing in February 1990 and (2) timely appeal Seevers' February 1990 sentences. Seevers requested $12,362.73 in damages, reflecting the attorney fees and costs he incurred in filing his various appeals and motions.

In response to Seevers' amended petition, Potter filed a demurrer arguing that Seevers' amended petition failed to set forth facts sufficient to state a cause of action. The district court found that Seevers' action was barred by § 25–222 and sustained Potter's demurrer. Seevers elected to stand on his amended petition, and the district court dismissed Seevers' action.

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Proctor v. Minnesota Mut. Fire & Cas., ante* p. 289, 534 N.W.2d 326 (1995); *Carlson v. Metz, ante* p. 139, 532 N.W.2d 631 (1995); *Barks v. Cosgriff Co.,* 247 Neb. 660, 529 N.W.2d 749 (1995). As to questions of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under

review. *George Rose & Sons v. Nebraska Dept. of Revenue, ante* p. 92, 532 N.W.2d 18 (1995); *Unland v. City of Lincoln,* 247 Neb. 837, 530 N.W.2d 624 (1995); *Winslow v. Hammer,* 247 Neb. 418, 527 N.W.2d 631 (1995).

## ANALYSIS

As a preliminary matter, we note that neither the trial court nor this court was asked to address whether Seevers may maintain an action for legal malpractice under the facts set forth in his petition, since he obtained only a reduction in sentence rather than an acquittal. Rather, we are asked to determine only whether Seevers' imprisonment tolled the statute of limitations. An appellate court will not consider on appeal an issue that was not presented to or passed upon by the trial court. *Ashland State Bank v. Elkhorn Racquetball, Inc.,* 246 Neb. 411, 520 N.W.2d 189 (1994). Thus, for the purposes of this opinion, we assume, without deciding, that Seevers has pled a viable cause of action.

Section 25-222 states:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further,* that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

Seevers argues that in legal malpractice claims related to criminal defense, the statute of limitations is tolled until the criminal defendant successfully obtains postconviction relief.

Though it is not expressed in his brief on appeal, Seevers necessarily couches his argument in the language in § 25–222 which allows a client to bring a claim for legal malpractice within 1 year from the date of discovery when the client did not and could not reasonably have discovered the cause of action within the prescribed 2–year period. Seevers intrinsically argues that in cases involving legal malpractice claims involving criminal defense attorneys, it is not reasonably possible for the client to discover his or her cause of action for professional negligence until the client successfully petitions for postconviction relief.

Potter correctly notes that the language of § 25–222 and this court's previous opinions clearly indicate the statute of limitations on professional negligence claims begins to run upon the occurrence of the alleged act of negligence. See, *Seagren v. Peterson*, 225 Neb. 747, 407 N.W.2d 790 (1987); *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). Potter also argues that the statutory language and the cited cases support the proposition that Seevers' imprisonment and motions for postconviction relief did not toll the statute of limitations because this court has "consistently held that non–discovery of all damages is not the equivalent of non–discovery of a cause of action as set forth in § 25–222." Brief for appellee at 6. In essence, Potter contends that a criminal defendant can *never* bring an action for negligence against his or her defense counsel more than 2 years after the occurrence of the alleged negligent conduct.

Case law from other jurisdictions provides support for both arguments. As support for his contention that his imprisonment tolled the statute of limitations on his professional negligence claim, Seevers cites *Shaw v. State, Dept. of Admin., PDA*, 816 P.2d 1358 (Alaska 1991). Shaw was convicted in 1973 on two counts each of burglary and robbery. On August 15, 1986, Shaw's convictions were set aside as being constitutionally defective, at least in part because of a conflict of interest between Shaw, his codefendant, and the attorney who represented both defendants. On January 13, 1988, Shaw filed a complaint alleging that his trial counsel negligently allowed a conflict of interest to lead to his 1973 convictions. The trial

counsel raised the defense of the statute of limitations.

The Alaska Supreme Court held that Shaw's professional negligence claim was not barred by the statute of limitations. The *Shaw* court formulated a rule wherein it held that a convicted criminal defendant had to obtain postconviction relief before pursuing an action for legal malpractice against his or her attorney. Since the criminal defendant could not know for certain whether he or she would successfully obtain postconviction relief until such relief was actually granted, the *Shaw* court held that the statute of limitations for filing a legal malpractice claim had to be tolled until such relief was granted. The *Shaw* court held that public policy required some form of postconviction relief as a prerequisite to filing a legal malpractice claim:

> "This is so because criminal prosecutions involve constitutional and procedural safeguards designed to maintain the integrity of the judicial system and to protect criminal defendants from overreaching governmental actions. These aspects of criminal proceedings make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules."

816 P.2d at 1360 (quoting *Carmel v. Lunney*, 70 N.Y.2d 169, 511 N.E.2d 1126, 518 N.Y.S.2d 605 (1987)).

Furthermore, the *Shaw* court found that the requirement of postconviction relief promoted judicial economy because many of the issues litigated in the quest for postconviction relief, such as proximate cause and damages, would be duplicated and relevant in the legal malpractice action. The court noted that if the defendant was denied postconviction relief, collateral estoppel would serve to eliminate frivolous malpractice claims. Additional benefits of requiring postconviction relief were described as follows:

> Moreover, requiring post–conviction relief as a prerequisite to a legal malpractice action aids in determining whether the statute of limitations bars the action. By adopting the date that post–conviction relief is obtained as the trigger to the statute of limitations, we establish a bright line test which should significantly assist

courts in the resolution of statute of limitations issues.

Systemic concerns also support such an approach. Mallen and Smith note "the litigious nature of incarcerated persons who occupy the time of their incarceration by pursuing civil actions against their former attorneys." [2 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 21.3 at 290 (3d ed. 1989)]. Also of concern is the attorney who, in the course of defending against a malpractice action, might produce privileged or other evidence in his or her defense that might hurt a criminal defendant with a legitimate basis for post–conviction relief. Finally, we note the desirability of allowing a criminal defendant with a valid post–conviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim.

816 P.2d at 1361.

The court's reasoning in *Shaw* was based primarily on public policy and judicial economy concerns. The *Shaw* court established a "bright line" rule for determining when the statute of limitations begins running on a legal malpractice claim by a criminal defendant against his or her trial counsel. The simplicity of the rule appears attractive at first blush. Furthermore, the *Shaw* rule provides the additional benefit of preempting meritless civil malpractice claims by requiring the criminal defendant to successfully obtain postconviction relief as an element of the malpractice claim.

Despite its advantages, the Michigan Supreme Court rejected the *Shaw* rule in *Gebhardt v O'Rourke*, 444 Mich. 535, 510 N.W.2d 900 (1994). In *Gebhardt*, the criminal defendant was convicted on January 8, 1987, of aiding and abetting a rape. The defendant successfully petitioned the trial court for a new trial, and on July 11, 1988, the trial court entered a judgment of acquittal. The order of acquittal became final on April 19, 1989. On November 3, the criminal defendant initiated a legal malpractice lawsuit against her criminal trial counsel. The statute of limitations in Michigan required the plaintiff in a legal malpractice case to file suit within 2 years of the attorney's last day of service or within 6 months of when the plaintiff discovered or should have discovered the claim.

The criminal defendant in *Gebhardt* argued, inter alia, that the 2-year statute of limitations should have been tolled until she successfully obtained postconviction relief. The criminal defendant's argument is essentially the same as the rule announced by the *Shaw* court. The *Gebhardt* court rejected the *Shaw* rule, calling it a "legal fiction with serious analytical flaws." 444 Mich. at 548, 510 N.W.2d at 906. The *Gebhardt* court found the policy arguments set forth by the *Shaw* court to be unpersuasive when balanced against the policies underlying the statute of limitations and the court's obligation to uphold the Legislature's intent: "Issue preclusion and collateral estoppel should be utilized in the appropriate case. However, the availability of these devices should not lead to a subversion of the statute of limitations by allowing a criminal defendant to first obtain postconviction relief before starting the clock on the limitation period." 444 Mich. at 549-50, 510 N.W.2d at 906-07.

The *Gebhardt* court recognized that the policy arguments set forth in the *Shaw* decision addressed some substantial concerns with regard to the conflict between simultaneous criminal postconviction actions and civil malpractice actions involving the same issues. However, the *Gebhardt* court analyzed the situation in a manner that provided a strict reading of the statute of limitations while addressing the problems posed by multiple litigations:

> As pointed out by defendants, situations are numerous where a criminal matter is pending before a court, and a related civil suit arising out of that criminal matter is also pending. Commonly, the court presented with the civil suit will yield to the criminal matter, allowing it to proceed so that the rights of the criminal defendant will not be infringed. Thus, the civil and criminal cases proceed along separate tracks, without danger that the two will collide producing waste of judicial resources or unfairness to the criminal defendant.

> The "two track" approach adopted today recognizes that a criminal defendant who has initiated postconviction relief proceedings should have knowledge sufficient to have discovered his claim against his initial defense

attorney for statute of limitation purposes. In order to put the defense attorney on notice that he will have to defend against a malpractice claim, and thereby honor the policies underlying the statute of limitations, the criminal defendant must file his malpractice complaint within six months of discovering the existence of the claim, or within two years of his attorney's last day of service in the matter in which the alleged negligence occurred.

With his claim preserved, he can and should seek a stay in the civil suit until the criminal case is resolved. The trial court handling the civil suit would have discretion regarding whether the stay would continue until judgment in the criminal matter is final or, if after the initial judgment on postconviction relief, justice would permit going forward with the civil suit while the appeal process in the criminal matter continues until final determination.

444 Mich. at 550–51, 510 N.W.2d at 907.

We find the Michigan Supreme Court's analysis in *Gebhardt* more persuasive and adopt that reasoning as it pertains to the instant case. As this court has held previously, the Nebraska Legislature, in adopting § 25–222, opted for the occurrence rule, tempered or ameliorated by a provision for discovery. *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). In other words, the statute of limitations begins running upon the occurrence of the professional negligence alleged, not when the plaintiff realizes the damage caused by the negligence. The fact that the plaintiff is imprisoned subsequent to his or her conviction does not affect the plaintiff's ability to reasonably recognize that he or she might have a viable claim for legal malpractice against his or her criminal trial counsel.

In settling upon the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *George Rose & Sons v. Nebraska Dept. of Revenue, ante* p. 92, 532 N.W.2d 18 (1995); *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995); *Anderson v. Nashua Corp.*, 246 Neb.

420, 519 N.W.2d 275 (1994). In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Proctor v. Minnesota Mut. Fire & Cas., ante* p. 289, 534 N.W.2d 326 (1995); *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995); *Russell v. State*, 247 Neb. 885, 531 N.W.2d 212 (1995).

The plain language of § 25-222 mandates that a claim for legal malpractice be brought within 2 years of the occurrence of the negligence, or within 1 year of the time that the professional negligence was or reasonably could have been discovered. Without attempting to pinpoint the exact date, we hold that Seevers could reasonably have discovered that he had a potential cause of action for legal malpractice against Potter prior to September 8, 1992—the date exactly 1 year prior to the date upon which Seevers filed his original petition in the instant action. Therefore, Seevers' cause of action is barred by the statute of limitations.

AFFIRMED.

FAHRNBRUCH, J., not participating.