Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:04 AM CST

Joseph J. Buttercase, appellant, v.
James Martin Davis and Davis
Law Office, appellees.

___ N.W.2d ___

Filed December 9, 2022.    No. S-20-871.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. **____: ____.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.

3. **Summary Judgment: Final Orders: Appeal and Error.** Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over all motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just.

4. **Default Judgments: Pleadings: Appeal and Error.** Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify a reversal on such a ground.

5. **Judgments: Appeal and Error.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

6. **Appeal and Error.** The grant or denial of a stay of proceedings is reviewed for an abuse of discretion.

7. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

8. **Judges: Recusal: Appeal and Error.** A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.

9. **Criminal Law: Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** A convicted criminal who files a legal malpractice claim must plead and prove the following: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client, and (4) innocence of the underlying crime with which the plaintiff was charged.

10. **Evidence: Proof.** Failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

11. **Negligence: Actions.** Merely because a cause of action is couched in terms of a cause of action other than negligence does not make it so.

12. **Constitutional Law: Actions.** A litigant has no constitutional right to have civil proceedings stayed pending the outcome of a criminal investigation.

13. **Actions: Proof.** The burden of establishing that a proceeding should be stayed rests on the party seeking the stay.

14. **Evidence.** Relevancy requires only that the probative value be something more than nothing.

15. ____. Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party.

16. **Evidence: Words and Phrases.** Unfair prejudice means an undue tendency to suggest a decision based on an improper basis.

17. **Judges: Recusal: Presumptions.** A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

Appeal from the District Court for Lancaster County: Darla S. Ideus, Judge. Affirmed.

Joseph J. Buttercase, pro se on brief, and Darik J. Von Loh, of Hernandez Frantz, Von Loh, for appellant.

Nicholas F. Miller, of Baird Holm, L.L.P., for appellees.

Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Wheelock and Post, District Judges.

Funke, J.

## INTRODUCTION

Joseph J. Buttercase was indicted on federal child pornography charges. James Martin Davis, attorney at law, and the Davis Law Office (collectively Davis) represented him in the matter for approximately 13 months before withdrawing. Buttercase subsequently pled guilty to an obscenity charge and then sued Davis for legal malpractice, breach of contract, breach of fiduciary duties, misrepresentation, and infliction of emotional distress. Construing all these claims as legal malpractice because they arose from Davis' conduct as an attorney, the district court for Lancaster County, Nebraska, granted Davis summary judgment because Buttercase failed to offer any evidence that he was actually innocent of the charges for which Davis was representing him. The district court also denied Buttercase partial summary judgment on his breach of contract claim and issued several prejudgment interlocutory rulings against him. Buttercase appeals. The appeal is without merit. We affirm.

## BACKGROUND

### Federal Proceedings

In December 2012, Buttercase was indicted for producing, manufacturing, transporting, and possessing child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(1) and (a)(5)(B) (2018). Because Buttercase was incarcerated, his parents met with Davis and arranged for Davis to represent him. The parties' agreement was verbal, and they later disagreed about whether the $15,000 payment to Davis after this meeting was a flat fee to cover all federal proceedings, including "all motions, hearings, trial, and not more than two appeals," or a nonrefundable retainer with additional fees for trial.

Davis entered an appearance indicating his representation of Buttercase concerning the federal charges. He then moved to

suppress the evidence against Buttercase and, when this failed, arranged for him to plead guilty to one count of possessing child pornography, with a sentence of 30 months' imprisonment. However, Buttercase refused to pay the full fee for a computer expert retained to testify at the suppression hearing and he rejected the proposed plea deal.

Matters came to a head when Davis asked Buttercase to sign a written agreement regarding the per diem fees for trial. Buttercase refused. He sent Davis a letter asserting that "trying to get more money (renegotiate) so close to trial seems like extortion" and that he expected Davis to perform all services allegedly required under the agreement or refund the $15,000. As a result, Davis sought and received the federal court's permission to withdraw as counsel for Buttercase.

Buttercase filed a bar complaint against Davis, and the matter was referred to the federal court for investigation.

Nearly a year later, Buttercase, now represented by a federal public defender, pled guilty to producing and transporting obscene materials for distribution, a violation of 18 U.S.C. § 1465 (2018), and was sentenced to 36 months' imprisonment, to run concurrently with the state sentence he was then serving. Buttercase's ex-wife and alleged victim testified at the sentencing hearing that she and Buttercase "married when I was a minor" and that she was a "consenting adult" in videos or images of her.

The federal court held an evidentiary hearing on the ethics complaint, at which Buttercase, Davis, and others testified. A magistrate judge subsequently found that "Davis did not commit an ethical violation" and "did not misrepresent the facts in his motion to withdraw" and recommended that the bar complaint be dismissed. This recommendation was adopted by the federal district court.

### Initial Pleadings and Motions

On February 22, 2017, Buttercase sued Davis for breach of fiduciary duty. The complaint alleged that Davis "reneged" on the agreed-upon fees for the computer expert and for

representation at trial and withdrew without performing under the contract or refunding the money. It also alleged that Davis committed fraud and disclosed sensitive or privileged information about Buttercase's criminal case in the motion to withdraw and failed to return case files to him after withdrawing.

Buttercase then filed an amended complaint on March 1, 2017, which Davis moved to dismiss. Buttercase, in turn, sought leave to amend. Davis did not object, the motion to amend was granted, and the hearing on the motion to dismiss was canceled. Buttercase filed a second amended complaint on June 5. Both amended complaints were generally identical to the original complaint, differing only as to the statutory basis for the court's jurisdiction and in their descriptions of the federal court's ethics investigation.

Thereafter, on July 31, 2017, Buttercase moved for a default judgment because Davis failed to plead in response to the second amended complaint. Davis answered on August 10. However, Buttercase objected and moved to strike the answer on the grounds that failure to answer within 30 days after service should be treated as an admission of all allegations.

At the hearing on the motions, Buttercase relied on his pleadings, while Davis argued that the court had set no deadline for responding to the second amended complaint. The court overruled the motion for a default judgment because "[t]here is an Answer on file and we will proceed on that basis." It also overruled the motion to strike.

Over 1 year later, on January 14, 2019, Buttercase filed a third amended complaint, alleging legal malpractice, breach of contract, breach of fiduciary duties, misrepresentation, and infliction of emotional distress. The primary focus of the complaint dealt with the alleged legal malpractice, reiterating the allegations of the original complaint and making new allegations regarding Davis' failure to investigate and seek dismissal of the charges, failure to disclose issues with the computer expert's qualifications and billing practices, and attempt to "coerce" Buttercase into pleading guilty to possessing child

pornography. A separate section captioned "Breach of Contract" alleged that Davis failed to perform under the contract or refund the $15,000.

Thereafter, on March 14, 2019, Buttercase made a second motion for a default judgment. The district court heard arguments on this motion, but Davis did not appear nor was he represented by counsel. However, in July, Davis moved to strike several pleadings, including the third amended complaint, because they were not properly served on him, and he advised the court that he had not received proper notice of all proceedings to date.

Subsequently, on August 5, 2019, the district court denied Buttercase's second motion for a default judgment, but it amended the progression order to give him an additional 6 months to disclose his expert witnesses. The court also ordered Davis to answer the third amended complaint within 14 days.

Davis failed to answer within this time, and on September 13, 2019, Buttercase filed a third motion for a default judgment. Davis answered on September 16. Then, on October 2, Buttercase made a second objection and motion to strike Davis' answer and moved to stay the case until his federal "criminal case" was resolved.

At the hearing on Buttercase's motions, Buttercase renewed his argument that Davis' answer was late and clarified that his "criminal case" involved federal postconviction relief. Davis countered that, regardless of whether he was late in answering, there was an answer on file, and "all we have to do is stand by our earlier answer." The district court overruled Buttercase's motions.

### CROSS-MOTIONS FOR SUMMARY JUDGMENT

Davis moved for summary judgment and later filed an amended motion. Buttercase, in turn, filed his own motion for partial summary judgment on his breach of contract claim, followed by an amended motion.

The hearing on the parties' cross-motions for summary judgment began with Buttercase's objections to Davis' exhibits 22 through 30, which included, respectively, Davis' affidavit; the docket, indictment, petition to enter a guilty plea, plea agreement, and judgment in the federal criminal case; the findings, recommendations, and order of dismissal from the ethics investigation; and the sentencing order for Buttercase's Nebraska convictions. Buttercase argued that all were irrelevant because he was not a party to or represented by Davis in these proceedings or, alternatively, if relevant, should be excluded because they were unfairly prejudicial. He also argued that Davis' affidavit; the plea petition, plea agreement, and judgment in the federal case; and the state sentencing order were inadmissible because they involved pleas, plea discussions, or convictions on appeal. In addition, he asserted that all evidence regarding the ethics investigation should be excluded because Davis committed fraud when seeking to withdraw.

Davis, in turn, objected to Buttercase's exhibit 14, the affidavit of the attorney Buttercase planned to call as an expert witness, because Buttercase did not disclose his expert by the deadline set in the progression order. Buttercase countered that the late disclosure was harmless because it did not prejudice Davis or disrupt the trial's efficiency, and the court could waive its own rules. He also argued that Davis "failed to follow the court's orders on numerous occasions."

As to the merits of his summary judgment motion, Davis argued that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law because Buttercase failed to timely disclose his expert, offered no evidence to support his claim of actual innocence, alleged no damages that he could prove Davis proximately caused, and did not file an evidence index and annotated statement of disputed facts. Buttercase responded that Davis also failed to timely disclose his experts. In addition, he argued that exhibit 20, the transcript of his sentencing hearing, was evidence of

his actual innocence because it included his ex-wife's testimony about her age.

Buttercase, for his part, argued that he was entitled to partial summary judgment on his breach of contract claim because he "made a prima facie case with his production" of exhibits. These exhibits included affidavits from him and his parents, a receipt for $15,000, correspondence about the per diem fees, Davis' motion to withdraw, and the judgment in the federal criminal case.

Subsequently, the district court overruled the objections to exhibits 22 through 30, sustained the objection to exhibit 14, and disposed of the cross-motions for summary judgment in Davis' favor. The court found that although Buttercase denominated his claims as breach of contract, among other things, all claims involved professional negligence because they arose from Davis' conduct as an attorney. It further found that these claims failed because a plaintiff alleging professional negligence on the part of a criminal defense attorney must show he or she is actually innocent of the "underlying crime," and Buttercase failed to produce any evidence of this. Specifically, the court found that "[n]othing in the record" suggests Buttercase is actually innocent of the pornography charges and that he voluntarily pled guilty to the obscenity charge, "which arose out of the same incident underlying" the pornography charges. The court also issued a summary order that same day overruling all pending motions as moot.

Subsequent Motions and Hearing

Buttercase subsequently moved for an order "resetting all progression deadlines" to "resolve" his failure to timely disclose his expert. He also moved to alter or amend the summary judgment order because it did not provide any findings of fact or conclusions of law as to why his motion for partial summary judgment was denied and his breach of contract claim dismissed. He later amended this motion to argue that he need not show actual innocence to prevail on his breach

of contract claim. In addition, he moved for reconsideration, arguing that Davis' affidavit should have been excluded because Davis failed to timely disclose himself as an expert. Buttercase also argued that his guilty plea to the obscenity charge was not voluntary because, when he pled guilty, he was unaware that his ex-wife would say she was an adult when the videos and images of her were produced.

The court heard arguments on these motions, as well as an oral motion for recusal that Buttercase made at the hearing. Buttercase argued that the court was biased toward him and favored "fellow attorney defendants," as shown by its repeatedly excusing Davis' failures to follow orders, while excluding exhibit 14 because Buttercase failed to meet a deadline. The court overruled all these motions that same day.

Buttercase appealed. While the appeal was pending, Davis passed away. The Nebraska Court of Appeals revived the matter against his heirs.

## ASSIGNMENTS OF ERROR

Buttercase assigns, restated and reordered, that the district court erred by (1) sustaining Davis' amended motion for summary judgment, (2) overruling his own amended motion for partial summary judgment, (3) denying his motions for a default judgment and to strike Davis' answers, (4) denying his motion to stay the case, (5) overruling the objections to exhibits 22 through 30 and sustaining the objection to exhibit 14, and (6) denying his motion for recusal.

## STANDARD OF REVIEW

[1,2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence

---

[1] *Ag Valley Co-op v. Servinsky Engr.*, 311 Neb. 665, 974 N.W.2d 324 (2022).

show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.[2]

[3] Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over all motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just.[3]

[4,5] Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify a reversal on such a ground.[4] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[5]

[6] The grant or denial of a stay of proceedings is reviewed for an abuse of discretion.[6]

[7] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[7]

[8] A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be

[2] *Id*.

[3] *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

[4] *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990).

[5] *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022).

[6] *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021).

[7] *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022).

affirmed on appeal unless the record establishes bias or prejudice as a matter of law.[8]

## ANALYSIS

### Davis' Amended Motion for Summary Judgment

Buttercase argues that the district court erred in granting summary judgment in Davis' favor because there were "genuine triable issues of material facts" as to his actual innocence and other matters.[9] He also argues that the district court erred in finding that he voluntarily pled guilty to the obscenity charge.

[9] Actual innocence is one of four factors we have recognized in considering legal malpractice claims. In *Rodriguez v. Nielsen*,[10] we held that a convicted criminal who files a legal malpractice claim must plead and prove the following: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client, and (4) innocence of the underlying crime with which the plaintiff was charged. The *Rodriguez* court noted that the actual innocence factor serves the dual goals of ensuring that convicted criminals are not given "an opportunity to profit either directly or indirectly" from their criminal conduct and "encouraging the representation of criminal defendants, especially indigents."[11]

Here, the district court found that no reasonable finder of fact could infer from the evidence that Buttercase could prove actual innocence.[12] In doing so, the court relied on

---

[8] See *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019).

[9] Brief for appellant at 21.

[10] *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000).

[11] *Id*. at 271, 272, 609 N.W.2d at 374.

[12] Cf. *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999) (defendant entitled to summary judgment if summary judgment evidence establishes, as matter of law, that at least one element of plaintiff's cause of action cannot be established).

Buttercase's conviction in the federal criminal case, among other things. We agree, at least as to the obscenity charge.

Actual innocence means factual and not legal innocence; in other words, the State has convicted the wrong person.[13] Whether Buttercase produced evidence of his actual innocence of child pornography with his ex-wife's statement at his sentencing hearing is perhaps arguable. However, we need not decide this issue because the situation as to the obscenity charge is clear. Here, there was no evidence suggesting that the federal government convicted the wrong person of this charge. To the contrary, the only evidence that Buttercase produced as to the obscenity charge was the judgment showing that he pled guilty to it.

This evidence is not negated by his ex-wife's age or by the argument, first made in his motion for reconsideration and renewed on appeal, that his plea was not voluntary. The age of the subject of a video or image is not an element of the federal crime of obscenity, unlike with child pornography.[14] As such, evidence of his ex-wife's age is not evidence of actual innocence of obscenity. Buttercase's argument that his guilty plea to the obscenity charge was not voluntary because, when he pled guilty, he was unaware that his ex-wife would say she was an adult when the videos and images of her were produced fails for similar reasons. Insofar as her age is not an element of obscenity, he cannot reasonably have based his plea to the obscenity charge on what he believed she would say about her age. Moreover, as Davis noted on appeal, Buttercase himself knew his ex-wife's age; he was not reliant on an attorney's investigation or her statements for this information.

His related argument, that he would not have pled guilty but for Davis' failure "to investigate and discover material

---

[13] See *Marie v. State*, 302 Neb. 217, 922 N.W.2d 733 (2019).

[14] Compare 18 U.S.C. §§ 2251(a) and 2252A(a)(1) and (a)(5) (referring to minors or children) with 18 U.S.C. § 1465 (no such references).

exculpatory evidence," fails because it was not raised before the trial court.[15] When an argument or theory is raised for the first time on appeal, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue that was never presented and submitted to it for disposition.[16]

The same is true for Buttercase's arguments that he is actually innocent of obscenity because the videos and images are not obscene under the U.S. Supreme Court's holding in *Miller v. California*[17] and that the federal obscenity statute cannot be constitutionally applied to him because, although he pled guilty to producing and transporting obscene materials for distribution, he only possessed and viewed images of his private intimate relations with his wife within his home. Neither argument was raised before the trial court, and as such, neither will be considered here.

[10] Finally, as to Buttercase's argument that his production of exhibits 9 through 21 shows the existence of genuine issues of material fact, there is no merit. These exhibits included the third amended complaint; the affidavits of Buttercase, his parents, and a family friend; a receipt for $15,000; Buttercase's letter refusing to pay the per diem fees for trial; an invoice for the computer expert's services; a transcript of the hearing on Davis' motion to withdraw; the judgment in the federal criminal case; a transcript of the sentencing hearing from the federal criminal case; and a letter from Buttercase to Davis requesting a refund. Insofar as these exhibits pertain to Davis' employment, neglect of duty, and damages, they are immaterial because Buttercase failed to produce any evidence of actual innocence of obscenity. Failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[18]

---

[15] Brief for appellant at 17.

[16] See *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021).

[17] *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973).

[18] See *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019).

### BUTTERCASE'S AMENDED MOTION FOR
### PARTIAL SUMMARY JUDGMENT

Buttercase argues that the district court erred in treating all claims in his third amended complaint as professional negligence; he argues that only his breach of contract claim should have been treated as such. He also argues that actual innocence is not required for a claim of professional negligence and that Davis failed to produce any admissible evidence in opposition to Buttercase's amended motion for summary judgment. These arguments are without merit.

[11] In a series of decisions over the past 50 years, this court has consistently held that plaintiffs cannot separate a cause of action arising primarily out of a professional's alleged negligence and label it something else in the hope of creating a different theory of recovery.[19] Buttercase argues that these decisions apply only to plaintiffs who attempt to label professional negligence something else in order to avoid the 2-year statute of limitations in Neb. Rev. Stat. § 25-222 (Reissue 2016) and, as such, have no bearing on him because his complaint was timely filed. However, in *Gravel v. Schmidt*,[20] we found that the same reasoning used in cases involving statute of limitations concerns was applicable to a case where no statute of limitations concerns were noted, but where an alleged attorney-client relationship was asserted. Merely because a cause of action is couched in terms of a cause of action other than negligence does not make it so.[21] This is particularly true in this case where the same facts and

---

[19] See, *Gravel v. Schmidt*, 247 Neb. 404, 527 N.W.2d 199 (1995); *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994); *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994), *disapproved on other grounds, Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998); *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989); *Jones v. Malloy*, 226 Neb. 559, 412 N.W.2d 837 (1987); *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964).

[20] *Gravel v. Schmidt, supra* note 19.

[21] *Nuss v. Alexander*, 269 Neb. 101, 691 N.W.2d 94 (2005).

circumstances are implicated in both the breach of contract and the malpractice claims.

Buttercase's argument that professional negligence, as alleged in his breach of contract claim, is distinct from legal malpractice and does not require a showing of actual innocence is similarly unavailing. He cites, in support of this argument, our holding in *Rodriguez* that "a convicted criminal who files a legal malpractice claim against his or her defense counsel must allege and prove that he or she is innocent of the underlying crime."[22] However, he ignores other language in *Rodriguez* which clearly shows that legal malpractice and professional negligence are synonymous as to attorneys.[23] His alternative argument, that he proved he is actually innocent of both the child pornography and the obscenity charges, was properly rejected by the district court, as previously noted.

Buttercase's argument regarding Davis' alleged failure to produce any "admissible contradictory evidence" in response to his exhibits 31 through 41 likewise fails.[24] These exhibits included the third amended complaint; the affidavits of Buttercase, his parents, and a family friend; a motion to intervene by Buttercase's father; Davis' letter to Buttercase regarding the per diem fees for trial and Buttercase's response; Davis' motion to withdraw; and a transcript of the hearing on this motion.

Buttercase is correct that once a movant for summary judgment makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents

---

[22] *Rodriguez v. Nielsen, supra* note 10, 259 Neb. at 273, 609 N.W.2d at 374.

[23] See, e.g., *id*. at 273, 609 N.W.2d at 375 ("[W]e do not agree with those jurisdictions that require convicted criminals to obtain exoneration through postconviction relief or reversal on appeal before pursuing an action for criminal legal malpractice; the statute of limitations for professional negligence . . . and our decision in *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995), prevent us from adopting such a rule").

[24] Brief for appellant at 18.

judgment as a matter of law shifts to the opposing party.[25] However, in this case, the district court properly concluded that Buttercase failed to make a prima facie showing on his breach of contract claim because all his claims are for professional negligence. Absent a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence that he or she expects to produce at trial to prove the allegations contained in his or her petition.[26] Thus, whether Davis produced any "admissible contradictory evidence" is immaterial.

### Motions for Default Judgment and Motions to Strike Answer

Buttercase argues that the district court abused its discretion and erred in denying his motions for a default judgment because, on three occasions, Davis filed his answer more than 30 days after service of the summons. As such, Buttercase maintains that he is entitled to a default judgment under *Osborn v. Osborn*[27] and *Turbines Ltd. v. Transupport, Inc.*[28]

We find no abuse of discretion here given our precedents and the record on appeal. *Osborn* and *Turbines Ltd.* are inapposite. *Osborn* did not involve a default judgment,[29] while *Turbines Ltd.* reversed a grant of a default judgment, even though the defendant "clearly ignored the district court's orders and failed to appear for trial," because the complaint failed to state a cause of action for recission of the parties' contract.[30]

---

[25] See *Boyle v. Welsh, supra* note 12.

[26] *Id.*

[27] *Osborn v. Osborn*, 4 Neb. App. 802, 550 N.W.2d 58 (1996).

[28] *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 825 N.W.2d 767 (2013).

[29] *Osborn v. Osborn, supra* note 27.

[30] *Turbines Ltd. v. Transupport, Inc., supra* note 28, 285 Neb. at 145, 825 N.W.2d at 779.

Our other decisions make clear that, even if the defendant fails to plead or answer after a court-ordered deadline, the plaintiff is not necessarily entitled to a default judgment. For example, in *Mason State Bank v. Sekutera*,[31] we upheld the denial of a default judgment even though the promisor failed to plead or answer within 20 days after the bank filed its amended complaint, as ordered by the district court. The promisor had not answered 2 months later, and the bank moved for a default judgment.[32] The promisor answered several weeks after the bank's motion, at which time the district court overruled the motion as moot because there was an answer.[33] The bank appealed, and we affirmed because "[t]he record contain[ed] no evidence of . . . an abuse of discretion."[34]

Similarly, in *Anest v. Chester B. Brown Co.*,[35] we upheld the denial of a default judgment even though the company failed to plead within 45 days, as ordered by the district court. The company had not answered approximately 7 months later, and the plaintiff in *Anest* moved for a default judgment. The district court overruled this motion, giving the company leave to answer instanter.[36] The plaintiff appealed, and we affirmed because no abuse of discretion was shown.[37] In fact, we expressly noted that a party in default may be permitted to answer at any time before judgment is issued.[38]

In this case, as in *Sekutera* and *Anest*, there is no evidence that the district court abused its discretion in denying a default judgment. Buttercase is correct that Davis filed an answer

[31] *Mason State Bank v. Sekutera, supra* note 4.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 365, 461 N.W.2d at 520.

[35] *Anest v. Chester B. Brown Co.*, 169 Neb. 330, 99 N.W.2d 615 (1959).

[36] *Id.*

[37] *Id.*

[38] *Id.*

more than 30 days after service of an amended complaint on three occasions. However, as *Sekutera* and *Anest* show, delay in itself does not prove an abuse of discretion. Something more is needed, and such evidence is lacking here insofar as the record shows that the district court was aware of answers on file each time it overruled Buttercase's motions for a default judgment. The record also shows that Davis filed a motion to dismiss in response to the original complaint, that Buttercase's first two amended complaints were essentially the same as his original complaint, and that Davis moved to strike the third amended complaint because it was not properly served on him.

Buttercase also argued before the trial court that his objections and motions to strike Davis' answers should have been granted under Neb. Rev. Stat. § 25-913 (Reissue 2016). However, he did not renew this argument, or make any other argument regarding his objections and motions to strike, on appeal despite assigning that the district court erred in overruling them. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[39] As such, we will not address this error because it was not argued in Buttercase's briefs.

## STAY OF PROCEEDINGS

Buttercase argues that the district court abused its discretion and erred in declining to stay the proceedings pending his "appeals and postconviction relief proceedings in the federal courts."[40] Relying on prior decisions in which we recognized that courts may stay civil suits until related criminal matters are resolved to avoid infringing criminal defendants' rights, he asserts that he was prejudiced, and his due process rights were abridged, by defending this case before the evidentiary hearing in his postconviction relief proceedings.

---

[39] *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022).

[40] Brief for appellant at 15.

[12,13] Courts inherently possess the power to stay proceedings when required by the interests of justice.[41] In determining whether to exercise this power, courts balance the competing needs of the parties, taking into account, among other things, the court's interests, the probability the proceeding will work a constitutional violation on the movant, the presence or absence of hardship or inequity, and the burden of proof.[42] Stays are often used to regulate the court's own proceedings or to accommodate the needs of parallel proceedings.[43] However, a litigant has no constitutional right to have civil proceedings stayed pending the outcome of a criminal investigation.[44] The burden of establishing that a proceeding should be stayed rests on the party seeking the stay.[45]

We find no abuse of discretion here. Buttercase quotes *Seevers v. Potter*[46] for the proposition that a criminal defendant who has not obtained postconviction relief, but wants to sue his or her attorney for malpractice, must file suit within the period prescribed by § 25-222 to preserve the claim, but then "'can and should seek'" to stay the civil suit until the criminal case is resolved.[47] However, the language quoted comes not from this court, but from the Michigan Supreme Court, whose reasoning we adopted in *Seevers* when holding that the statute of limitations for a legal malpractice claim is not tolled until a criminal defendant obtains postconviction relief.[48] Neither

---

[41] *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996), *disapproved on other grounds, Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004).

[42] See *id*.

[43] *Jennifer T. v. Lindsay P.*, 298 Neb. 800, 906 N.W.2d 49 (2018).

[44] See, e.g., *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993).

[45] *Id*.

[46] *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995).

[47] Brief for appellant at 16.

[48] *Seevers v. Potter, supra* note 46.

*Seevers* nor the Michigan Supreme Court opinion quoted therein addressed whether the denial of a stay constituted an abuse of discretion.

Instead, it is the other opinion cited by Buttercase, *Schuessler v. Benchmark Mktg. & Consulting*,[49] that illustrates the burden the proponent of a stay must meet. In *Schuessler*, a company moved to stay a wrongful discharge suit by one of its employees pending the outcome of an investigation into alleged mail and wire fraud by the company. The district court denied this motion, and we affirmed.[50] The company's attorney had submitted an affidavit asserting that, because of the "'similarity of the evidence and issues involved in the two matters,'" the company and its personnel could not present the necessary testimony and evidence in the civil case without subjecting themselves to possible incrimination in the criminal case.[51] However, we found that the "mere affidavit . . . , without more, simply does not provide enough evidence of inability to defend to convince us that the district court abused its discretion."[52] We further noted that a "stay of a civil action, especially a stay of indefinite duration, is an extraordinary remedy" and would "obviously damage [the employee]."[53]

The U.S. Supreme Court took a similar approach in *United States v. Kordel*,[54] finding that officers of a company charged with both civil and criminal offenses by the federal government failed to show that denial of a stay constituted an abuse of discretion. The officers asserted that proceeding to trial in the civil case would violate their Fifth Amendment privilege against compulsory self-incrimination, but "they never even

---

[49] *Schuessler v. Benchmark Mktg. & Consulting, supra* note 44.

[50] *Id*.

[51] *Id*. at 432, 500 N.W.2d at 536.

[52] *Id*. at 433, 500 N.W.2d at 536.

[53] *Id*. at 432, 500 N.W.2d at 536.

[54] *United States v. Kordel*, 397 U.S. 1, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970).

asserted, let alone demonstrated, that there was no authorized person who could answer the interrogatories [in the civil case] without the possibility of compulsory self-incrimination."[55] The officers also alleged unfairness and a violation of due process, but the court found nothing in the record to support these claims.[56]

The situation here is like that in *Schuessler* and *Kordel* in that Buttercase makes vague claims about violations of due process and being harmed by the "disclosure of sensitive privileged information." However, he offers no specifics, much less evidence, about how proceeding to trial on his civil claim would impede his ability to defend himself in his postconviction relief proceedings on the obscenity charge.

### ADMISSION OF EVIDENCE

Buttercase argues that the district court erred in overruling his objections to exhibits 22 through 30 on relevance, unfair prejudice, and other grounds. He also argues that the district court erred in excluding exhibit 14 upon Davis' objection that Buttercase failed to disclose his expert by the deadline set in the court's progression order.

[14-16] Under Neb. Evid. R. 401, evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.[57] Relevancy requires only that the probative value be something more than nothing.[58] Under Neb. Evid. R. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[59] Most, if not

---

[55] *Id*., 397 U.S. at 9.

[56] *United States v. Kordel, supra* note 54.

[57] *Lindsay Internat. Sales & Serv. v. Wegener*, 301 Neb. 1, 917 N.W.2d 133 (2018).

[58] See *id*.

[59] *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).

all, evidence offered by a party is calculated to be prejudicial to the opposing party.[60] Unfair prejudice means an undue tendency to suggest a decision based on an improper basis.[61] Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court, whose decision we will not reverse unless there is an abuse of discretion.[62]

We find no abuse of discretion here. As an initial matter, we note that the judgment in Buttercase's federal criminal case, showing he pled guilty to obscenity, was offered by Buttercase as exhibit 19, as well as by Davis as exhibit 27. Exhibit 19 was admitted without objection. As such, Buttercase's objection to exhibit 27 is moot because he himself introduced the same document into evidence, and we exclude exhibit 27 from the discussion below.

There is no merit to Buttercase's argument that exhibits 22 through 26 and 28 and 29 are not relevant because Davis did not represent him when he pled guilty to obscenity, and he was not a party to the ethics investigation and could not appeal its findings. The docket for the federal criminal case, as well as the indictment, petition to enter a guilty plea, and plea agreement in the federal criminal case and the statements about it in Davis' affidavit, were relevant to the issue of whether Buttercase is actually innocent of the underlying charges. Similarly, the findings, recommendations, and order from the federal court's ethics investigation were relevant to the issue of whether Davis caused damages to Buttercase when seeking to withdraw as counsel.

The relevance of exhibit 30, the sentencing order for Buttercase's state convictions, is less clear. However, we need not speculate further about what fact it could make more or

---

[60] *Id.*

[61] *Id.*

[62] See *id.*

less probable. To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about the evidence admitted or excluded,[63] and Buttercase cannot show the admission of exhibit 30 prejudiced a substantial right because the district court did not rely upon it in ruling upon Davis' motion for summary judgment. In fact, neither exhibit 30 nor Buttercase's Nebraska crimes are mentioned in the district court's order.

Similarly, we find no abuse of discretion by the district court when balancing the probative value of exhibits 22 through 26, 28, and 29 against any unfair prejudice that they might create. Buttercase has not offered any rationale for why these exhibits should have been excluded under Neb. R. Evid. 403. However, any argument he might make would be undercut by the fact that he himself offered evidence of his indictment on child pornography charges and his guilty plea to and sentence for obscenity. He also offered evidence showing the outcome of the federal court's ethics investigation.

We also reject the suggestion that the admission of Davis' affidavit, Buttercase's petition to plead guilty to the federal obscenity charge, and the plea agreement regarding the obscenity charge constitutes reversible error because these exhibits are inadmissible under Neb. R. Evid. 410 or Neb. R. Evid. 609(5). Even assuming any exhibits related to Buttercase's plea to the federal charges, including the sections of Davis' affidavit mentioning the plea, were erroneously admitted into evidence, this would not be grounds for overturning the district court's decision because Buttercase himself introduced evidence showing his guilty plea and sentence for obscenity. The erroneous admission of evidence in a summary judgment hearing is not reversible error if other relevant evidence,

---

[63] *Brown v. Jacobsen Land & Cattle Co.*, 297 Neb. 541, 900 N.W.2d 765 (2017).

admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings, as it did here.[64]

Buttercase's remaining arguments as to why exhibits 22 through 26 and 28 through 30 should have been excluded are similarly unavailing. Although Buttercase asserts that Davis' affidavit and the findings, recommendations, and order from the ethics investigation include "fraud and perjury,"[65] the record shows that the federal court found "Davis did not misrepresent the facts in his motion to withdraw." Likewise, the argument that Davis' affidavit should have been excluded because he did not timely disclose himself as an expert fails because Buttercase did not raise it when he objected to exhibit 22 at the hearing on the cross-motions for summary judgment, despite raising it at that same hearing when arguing that exhibit 14 should be admitted. An objection to the admission of evidence is generally not timely unless it is made at the earliest opportunity after the ground for the objection becomes apparent.[66] A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection.[67]

As to Buttercase's proposed exhibit 14, Buttercase is correct that the district court's progression order addresses the disclosure of "experts who may be called to testify at trial," and the offering of an affidavit in support of a motion for summary judgment can be distinguished from calling a witness at trial.[68]

---

[64] *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[65] Brief for appellant at 29.

[66] *In re Interest of Ashley W.*, 284 Neb. 424, 821 N.W.2d 706 (2012).

[67] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

[68] Cf. *Carrizales v. Creighton St. Joseph*, 312 Neb. 296, 979 N.W.2d 81 (2022).

However, even assuming that the district court erred in excluding this exhibit, it is not reversible error. As we previously noted when discussing exhibit 30, to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about the evidence admitted or excluded.[69] This is not the case here. Exhibit 14 does not purport to address Buttercase's actual innocence, which is why his opposition to Davis' motion for summary judgment failed. Similarly, as to Buttercase's own motion for partial summary judgment on his breach of contract claim, we found that the claim cannot be maintained as an independent claim, separate and apart from a claim of professional negligence.

## MOTION TO RECUSE

Buttercase argues that the district court erred in failing to recuse itself. He first moved for recusal during the hearing on his motion for reconsideration, arguing that the court repeatedly "allowed" Davis "to ignore its orders," but excluded exhibit 14 because Buttercase failed to timely disclose his expert.[70] He renews this argument on appeal, as well as points to newly discovered evidence of alleged ex parte communications.

[17] Judges should recuse themselves when a litigant shows that a reasonable person, who knew the circumstances of the case, would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[71] A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.[72] An

---

[69] *Brown v. Jacobsen Land & Cattle Co., supra* note 63.

[70] Brief for appellant at 33.

[71] *State v. Brunsen*, 311 Neb. 368, 972 N.W.2d 405 (2022).

[72] *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party.[73] Judges who initiate, invite, or receive ex parte communications concerning pending or impending proceedings must recuse themselves from the proceedings when a litigant requests recusal.[74]

We find that Buttercase failed to meet the burden of showing that recusal was warranted here. He points to several rulings from the court that he asserts favored Davis and disfavored him. However, we have already found that the district court did not abuse its discretion in these rulings. Moreover, even assuming that Buttercase did not waive disqualification on this basis by failing to raise it before the motions for summary judgment were decided,[75] one of the cases he himself cites, *Liteky v. United States*,[76] found that "opinions formed by the judge on the basis of facts introduced or events occurring in the court of the current proceedings" generally do not constitute a basis for a bias or partiality motion. The other case he cites as setting a "new standard" requiring recusal when the "'probability of actual bias . . . is too high,'"[77] *Caperton v. A. T. Massey Coal Co.*,[78] is similarly inapposite because it involved the appearance of bias created by campaign contributions to a judge, something not at issue here.

His evidence of an alleged ex parte communication similarly fails. He asserts that there must have been such communication

---

[73] *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

[74] See *id.*

[75] See *In re Interest of J.K.*, 300 Neb. 510, 915 N.W.2d 91 (2018).

[76] *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). Cf. *In re Interest of J.K., supra* note 75, 300 Neb. at 518, 915 N.W.2d at 98 ("[j]udicial rulings alone almost never constitute a valid basis" for bias motion).

[77] Brief for appellant at 34.

[78] *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009).

because Davis filed his amended motion for summary judgment and related materials at 11:08 a.m. on May 8, 2020, and the court issued a progression order regarding summary judgment at 1:13 p.m. on May 8. He wonders, "How did [Davis] know to submit pleadings to the district court pursuant to a progression order that was not even filed yet without ex parte communications?"[79] However, the progression order in question concerned the original motions for summary judgment. It makes no mention of an amended motion or sets any deadline for the filing of one. As such, Davis' May 8 filing was not made "pursuant" to the court's order. Rather, the timing of Davis' filing and the court's progression order was purely coincidental.[80]

## CONCLUSION

Buttercase's claims that the district court erred in disposing of the parties' competing motions for summary judgment and its prejudgment interlocutory rulings are without merit. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

HEAVICAN, C.J., and MILLER-LERMAN, J., not participating.

---

[79] Brief for appellant at 33.

[80] See, e.g., *State v. Thompson*, 301 Neb. 472, 476, 919 N.W.2d 122, 126 (2018) (defendant failed to meet burden to show ex parte communication where court's statement that charges against defendant "'"may, from what the prosecutor tells me, change [if victim dies]"'" was based on court's assumptions, not private conversation between state and prosecutor).